13 October 1999

No. 2--98--1494

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

AUDREY WIEGMAN,                 ) Appeal from the Circuit Court

                             ) of Lake County.

Plaintiff-Appellee,         )

                                 )

v.                            ) No. 97--L--944

                                 )

HITCH-INN POST OF              )

LIBERTYVILLE, INC.,             ) Honorable

                 ) Terrence J. Brady,

Defendant-Appellant. ) Judge, Presiding. 

______________________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Audrey Wiegman, filed this negligence lawsuit against the defendant, the Hitch-Inn Post of Libertyville, Inc., to recover for injuries she sustained when she slipped and fell at the bottom of a stairway near the sauna room at the defendant's hotel.  The trial court denied the defendant's motion for a directed verdict.  Thereafter, the jury returned a verdict in favor of the plaintiff, and the trial court subsequently denied the defendant's posttrial motion for a judgment notwithstanding the verdict.  The defendant appeals, contending that (1) the plaintiff failed to present any evidence as to the cause of her fall and, therefore, the jury's verdict must be set aside as being based on speculation and conjecture; (2) the plaintiff's expert's testimony was irrelevant and inadmissible; (3) the plaintiff failed to prove that the defendant had constructive notice of the wet condition of the floor in the area where the plaintiff fell; (4) the trial court erred in refusing to allow a jury instruction on the duty of care owed to a trespasser; (5) the trial court erred in refusing 
to allow the defendant to present evidence of the plaintiff's consumption of alcohol on the day of the accident; and (6) the trial court erred in awarding certain costs to the plaintiff.

The 42-year-old plaintiff testified at trial that on the day of the occurrence, February 19, 1994, she and her family were guests at the defendant's hotel.  On that day, the plaintiff had been at a wedding reception.  She returned to the hotel about 8:30 p.m.   After spending time in her room with her children, she went to find her husband, who she thought was playing pool in the recreation area of the hotel.  On her way, she walked through the open gate at the pool area and then down the stairway toward the area where the sauna and exercise rooms were located.  She did not see a sign indicating that the pool area was closed.  However, she did remember seeing people still in the pool and others standing around in the pool area.   She also observed a sign that read:

"No lifeguard on Duty.  Swim at Your Own Risk.  No Food or Glass.  Children Must Be Accompanied by An Adult.  Do Not Enter Pool When Covered.  No Running in Pool Area.  Pool for Registered Guests Only.  No Pool Parties Allowed.  No Radios Allowed Anywhere."

She also saw a sign stating that the pool hours were from 8 a.m to 10 p.m.  The plaintiff further testified that she was wearing leather-soled sandals and carrying a child in her arms as she descended the stairs.  She also had two small girls with her, and they were walking in front of her or to her side.  Several feet away from the bottom of the stairs was a sauna room.  There were no mats at the bottom of the stairs at the time she fell.  When the plaintiff reached the bottom of the stairs, the next thing she remembered was lying on the floor with her sister above her.  She did not know what caused her to fall but stated that she fell on the tile floor surface at the bottom of the stairs.  She also stated that she did not trip on anything.  She was later taken to the hospital and was treated for a cut to the back of her head.  At the hospital, she noticed that the back of her dress was wet.  According to the plaintiff, her fall occurred at about 10 p.m., or maybe 10:15 p.m, when there were still many people in the pool area.

Ron Wiegman, the plaintiff's husband, testified that he was playing pool at the hotel with his nephew at the time of the plaintiff's fall.  He found the plaintiff lying at the bottom of the stairway that was between the game room and the pool area.  The plaintiff was lying with her head toward the bottom of the steps and her feet toward the other stairway.  He noted that there was water on the floor all around the plaintiff.  He further stated that when he knelt down his knee immediately became soaked.  He acknowledged that he did not see what caused the plaintiff to fall.  He further testified that the accident happened around 9:30 p.m.  On cross-examination, he stated that the accident happened between 9 p.m. and 9:20 p.m. but admitted that in his deposition taken two years earlier he had testified that it happened at approximately 9:45 p.m or 10 p.m.  He acknowledged that an emergency room record contained a notation indicating that the accident occurred at 10:15 p.m.

Pamela Kirschbaum, the plaintiff's sister, testified that she learned that the plaintiff had fallen when she heard a scream, ran over to the area, looked down the steps, and saw the plaintiff lying at the bottom of the steps holding a baby.  Kirschbaum noted that she was in the pool area at the time of the occurrence and there were several people still in the pool at that time.  She noticed that there was standing water all over the floor in the area where the plaintiff had fallen.  She also noted that there had been water in the same location when she had been by there earlier in the day but she had not informed the hotel of this fact.  She stated that there were no mats on the floor in that area and there had not been any mats on the floor earlier in the day when she viewed the floor.

Kenneth Kirschbaum, the plaintiff's brother-in-law, testified that he did not witness the accident but that his wife informed him of it sometime after 10 p.m.  At the time, he was in the pool area, talking with people.  He noted that there were people still swimming in the pool.  About 15 or 20 minutes after the accident, he went with his wife to view  the scene of the accident.  At this time, the plaintiff had already left for the hospital.  He noted that blood and water were still on the floor and was amazed because hotel personnel had not cleaned the area yet.  He speculated that the water in the area had to have come from dripping swimmers because the stairs were so close to the pool. 

Allan Pickus, a licensed Illinois architect with extensive experience in the area of building safety, testified in his videotaped evidence deposition presented at trial that he examined the area of the defendant's hotel where the plaintiff was injured.  He noted that the stairway in the area was carpeted but the floor was covered by glazed ceramic tile without any nonslip preparation.  He testified that in his opinion the defendant could have taken some measures to alleviate the potential hazard at the bottom of the steps, such as installing proper matting or nonslip ceramic tile.  Pickus further noted that the sign warning of the slippery condition was not visible until one had already descended the stairs and reached the condition and was therefore of no value.  In his opinion, the defendant should have installed a sign offering a sufficient warning to the condition.  When asked whether his opinions were based on a reasonable degree of certainty in the profession of architecture, Pickus responded affirmatively, stating, "I think that you would not find *** much variation[] [with] the opinions I have expressed."  He also stated his opinions were based on his experience as a licensed architect and "what getting a license means in the State of Illinois."

Robert Boesch, the general manager of the hotel, testified that it was his practice to close the pool area at 10 p.m. and put a lock on the gate.  He acknowledged that there is no sign indicating that the pool area is closed at 10 p.m., nor is there a sign that indicates that the deck area is closed at that time.  The only sign indicating that the exercise room is closed at 10 p.m. is on the door to that room.  Boesch explained that the sign stating that the pool closed at 10 p.m. was supposed to apply to the whole area.  He noted that a tarp is placed over the pool at 10 p.m. and, if there were still people in the pool area after that time, the maintenance personnel would not have been doing their jobs correctly.  He also noted that the hotel's policy was to set up "hand-held" temporary barricades around the areas that are mopped.

Guy Norman, a hotel maintenance and security employee, testified that he worked the third shift from 10 p.m until 6 a.m. on the evening in question.  He noted that he had a routine that he generally followed during his shift but did not necessarily remember the specifics of the evening in question.  According to his routine, within a few minutes of starting his shift, he would remove the mats or runners that were normally located at the bottom of the stairs where the plaintiff fell and then hang the mats up to dry over the pool area.  Within minutes of starting his duties, he would have walked through the area in question twice, and if he noticed that it was wet, he would have mopped up the water.  He stated that he recalled that the mats were there on the evening in question.  He noted that he would normally mop the area and place "hand-held" caution signs around the area that was wet from being mopped.  He first learned of the accident shortly after the pool area was closed.  However, he acknowledged that the hotel's incident report stated that he received the call about the accident at 10:30 p.m.  He noted that after he was notified of the occurrence, he mopped and dried the area of the fall.  He indicated that he could not remember whether he had mopped and dried the area to clean up water or only blood.  

At the close of all the evidence, the defendant moved for a directed verdict, which the trial court denied.  The jury returned a gross verdict of $65,625 for the plaintiff and then reduced it by 20% due to the contributory negligence of the plaintiff, for a net award of $52,500.  The trial court entered judgment on the verdict and thereafter denied the defendant's posttrial motion.

On appeal, the defendant argues that the plaintiff failed to present any evidence as to the cause of her fall and therefore failed to establish a 
prima
 
facie
 case of negligence.  The defendant maintains that the evidence of water on the tile floor surface, without some evidence that the plaintiff actually slipped on that surface, was insufficient to establish that the water on the floor was the proximate cause of the plaintiff's fall.  In response, the plaintiff argues that the testimony of the three witnesses who observed the plaintiff lying on the floor shortly after her fall, along with the condition of the floor on which she was lying and her testimony of what she remembered prior to the fall, was sufficient circumstantial evidence to establish that the proximate cause of her fall was the defendant's wet tile floor.

A directed verdict or a judgment notwithstanding the verdict should be entered only where " 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors  movant that no contrary verdict based on that evidence could ever stand.' "  
Maple v. Gustafson
, 151 Ill. 2d 445, 453 (1992), quoting 
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510 (1967).  Moreover, a reviewing court may consider the evidence, and any inferences therefrom, only in the light most favorable to the party resisting the motion and may not grant judgment notwithstanding the verdict merely because a verdict is against the manifest weight of the evidence.  
Maple
, 151 Ill. 2d at 453.

To prevail in a negligence action, the plaintiff must prove that the defendant owed a duty of reasonable care to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury.  
American National Bank & Trust Co. v. National Advertising Co.
, 149 Ill. 2d 14, 25 (1992).  It is well settled that liability cannot be predicated upon surmise or conjecture as to the cause of an injury, and therefore proximate cause can be established only when there is a reasonable certainty that the defendant's act caused the injury.  
Bellerive v. Hilton Hotels Corp.
, 245 Ill. App. 3d 933, 936 (1993).  However, it is not essential that causation be shown by direct evidence.  
Canzoneri v. Village of Franklin Park
, 161 Ill. App. 3d 33, 41 (1987).  Causation may be established by facts and circumstances which, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury.  
Canzoneri
, 161 Ill. App. 3d at 41.  It is also not necessary that only one conclusion follow from the evidence.  
Canzoneri
, 161 Ill. App. 3d at 41.  However, where from the proven facts the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion that it exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be allowed to draw it.  
Salinas v. Chicago Park District
, 189 Ill. App. 3d 55, 59 (1989).  It has also been stated that a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only probable, not merely possible, conclusion that can be drawn therefrom.  
Bakkan v. Vondran
, 202 Ill. App. 3d 125, 130 (1990); 
Waite v. Chicago Transit Authority
, 157 Ill. App. 3d 616, 620 (1987).  

In support of its position that the plaintiff failed to establish proximate cause in the present case, the defendant relies on 
Kimbrough v. Jewel Cos. Inc.
,  92 Ill. App. 3d 813 (1981), and a number of other similar cases.  Of the cases cited by the defendant that actually involved a slip and fall on a defendant's flooring, 
Kimbrough
 is the leading case, being relied upon in a number of other decisions.  There, the plaintiff fell on a ramp as she left the defendant's store.  
Kimbrough
, 92 Ill. App. 3d at 814.  Although there were some grease spots on the ramp, the plaintiff admitted that she did not know why she had fallen or even if she had slipped on the grease.  
Kimbrough
, 92 Ill. App. 3d at 816.  She did not touch the grease or see if it was actually slippery in any way.  
Kimbrough
, 92 Ill. App. 3d at 816.  She also did not look at the bottom of her shoe to see if there was grease on it.  
Kimbrough
, 92 Ill. App. 3d at 816.  The court held that because a causal connection had not been established between her fall and any condition under the defendant's control, summary judgment was proper.  
Kimbrough
, 92 Ill. App. 3d at 818.

In 
Brett v. F.W. Woolworth Co.
, 8 Ill. App. 3d 334 (1972), the 71-year-old plaintiff entered the defendant's store and fell just inside the entranceway onto a rug.  8 Ill. App. 3d at 335-36.  A store employee found her lying with the lower portion of her body on the rug.  
Brett
, 8 Ill. App. 3d at 337.  It was the plaintiff's theory that her fall was caused by a depression between two rugs, given that she was found in close proximity to an alleged depression in the rugs.  
Brett
, 8 Ill. App. 3d at 337.  The plaintiff, however, admitted that she did not see or feel what caused her to fall.  
Brett
, 8 Ill. App. 3d at 338.  The 
Brett
 court held that even though the plaintiff's body was found in close proximity to the alleged depression, the inference sought by the plaintiff was too ambiguous an inference upon which to predicate a causal connection.  
8 Ill. App. 3d at 337.  Accordingly, the reviewing court affirmed the judgment for the defendant notwithstanding the verdict.  
Brett
, 8 Ill. App. 3d at 338.

In 
Vance v. Lucky Stores, Inc.
, 134 Ill. App. 3d 166 (1985), the plaintiff entered the defendant's store on a snowy morning and stomped her feet on a mat at the entranceway.  134 Ill. App. 3d at 166-67.  She then proceeded down aisle three or four, which was crowded with people.  
Vance
, 134 Ill. App. 3d at 167.  She then fell, striking her shoulder on a shelf.  
Vance
, 134 Ill. App. 3d at 167.  She did not observe any substance in the area that caused her to fall and she did not know why she fell.  
Vance
, 134 Ill. App. 3d at 167.  She did observe an undisturbed, clear, milky-colored puddle about the size of her hand near her on the floor.  
Vance
, 134 Ill. App. 3d at 167.  The substance, however, was not smeared or tracked about with footprints.  
Vance
, 134 Ill. App. 3d at 167.  Relying on 
Kimbrough
, the appellate court found that there was no evidence of what caused the plaintiff's fall, and, therefore, the trial court properly granted a directed verdict for the defendant.  
Vance
, 134 Ill. App. 3d at 169.

In 
Kellman v. Twin Orchard Country Club
, 202 Ill. App. 3d 968 (1990), the plaintiff's decedent slipped and fell face down in a shower stall.  
Kellman
, 202 Ill. App. 3d at 970.  There was no evidence of what caused the decedent to fall.  
Kellman
, 202 Ill. App. 3d at 974.  There was evidence, however, that the decedent had been unsteady on his feet and required assistance to reach the shower area to prevent himself from falling.  
Kellman
, 202 Ill. App. 3d at 975.  Under these circumstances, the court held that the position of the decedent's body after the fall and the defective condition of the shower stall did not establish that the defendant's injuries were the proximate cause of the plaintiff's negligence.  
Kellman
, 202 Ill. App. 3d at 976.

In 
Barker v. Eagle Food Centers, Inc.
, 261 Ill. App. 3d 1068 (1994), the plaintiff's complaint alleged that she slipped and fell in the produce department of the defendant's store because the floor was wet.  
Barker
, 261 Ill. App. 3d at 1069.  However, in her deposition, the plaintiff stated that she did not observe the floor at all and did not notice whether her clothes were wet after she fell.  
Barker
, 261 Ill. App. 3d at 1070.  She stated that she assumed the floor was wet because " '[o]therwise, I wouldn't have slipped.' "  
Barker
, 261 Ill. App. 3d at 1070.  The court found the plaintiff's testimony insufficient to prevent summary judgment from being entered.  See 
Barker
, 261 Ill. App. 3d at 1071.  The court also found that, even if the plaintiff had proved that the defendant sometimes sprayed fruits and vegetables, causing wetness on the floor, such circumstantial evidence would not raise a genuine issue of fact because it could not be inferred that the floor was wet at the time and place of the plaintiff's fall.  
Barker
, 261 Ill. App. 3d 1072.

In 
Bellerive v. Hilton Hotels Corp.
, 245 Ill. App. 3d 933 (1993), the plaintiff fell while descending a flight of stairs.  
Bellerive
, 245 Ill. App. 3d at 934.  She testified in her deposition that, as she stepped down from the third step of a flight of stairs to the second step, she felt that her foot was not quite level and she fell.  
Bellerive
, 245 Ill. App. 3d at 935.  The trial court granted the defendant's motion for summary judgment, and, on appeal, the issue was whether the plaintiff had identified the cause of her fall with sufficient specificity.  
Bellerive
, 245 Ill. App. 3d at 935-37.  In reversing summary judgment, the reviewing court found that the plaintiff's testimony was enough to indicate that the uneven stair was the cause of her fall.  
Bellerive
, 245 Ill. App. 3d at 935-37.

In 
Canzoneri v. Village of Franklin Park
, 161 Ill. App. 3d 33 (1987), the plaintiff testified that she fell when a piece of broken sidewalk moved under her feet.  
Canzoneri
, 161 Ill. App. 3d at 35.  In reversing a summary judgment order, the appellate court distinguished 
Kimbrough
 and similar cases, finding that in those cases the lack of an identifiable defect was the determinative factor, while in the case before it, the plaintiff specifically pointed to a defect that she claimed had caused her to fall.  
Canzoneri
, 161 Ill. App. 3d at 39. 

Applying the above-mentioned principles and authority, we do not find that the evidence so overwhelmingly favors the defendant that no contrary verdict could ever stand.  Instead, we believe that the trial court properly denied the defendant's motions for a directed verdict and a judgment notwithstanding the verdict.  The cases cited by the defendant that granted either summary judgments or directed verdicts for the defendants are either distinguishable or indicate that the case now before us
 was a proper case for the jury to decide.  In 
Kimbrough
, the case upon which most of the other slip-and-fall cases rely, the court found it significant, suggesting that the outcome would have been different had it been otherwise, that the grease spot cited as a possible cause of the fall was undisturbed and the plaintiff did not look to see if the bottom of her shoe had grease upon it.  
Kimbrough
, 92 Ill. App. 3d 813.  In contrast, the plaintiff in the present case fell directly in the water on the tile floor with her body positioned in a manner indicative of a slip, and her testimony established that she did not trip.  Moreover, two witnesses testified that the floor all around the plaintiff was wet, and the plaintiff herself testified that her dress was wet.  Furthermore, the plaintiff's expert testified that the flooring in that area was not of a nonslip nature.  Under the circumstances, we find 
Kimbrough
 to be distinguishable.

We also find the other cases discussed above to be as easily distinguishable.  In 
Vance
, the substance found on the floor near the plaintiff's fall, as in 
Kimbrough
, was undisturbed.  
Vance
, 134 Ill. App. 3d 166.  In 
Kellman
, there was evidence that the decedent was unsteady on his feet, requiring assistance  even to make it to the shower stall, and, therefore, in light of the decedent's feebleness, the only probable conclusion in that case was not that the defendant's slippery shower stall caused the accident. 
Kellman
,  202 Ill. App. 3d 968.  In 
Barker
, unlike the present case, no one observed the condition of the floor, and the plaintiff did not notice that her clothes were wet after the fall.  
Barker
, 261 Ill. App. 3d 1068.  
Brett
 did not involve a fall on tile flooring covered with water but instead involved an elderly plaintiff who fell onto carpeting.  
Brett
, 8 Ill. App. 3d 334.  Thus, the  circumstances in that case did not indicate that the defendant's negligence was the more probable or the only probable cause of the defendant's fall, and, for that reason, it is distinguishable from the present case.

The defendant next argues that the plaintiff's expert's opinion testimony about the flooring in the area where the plaintiff fell was irrelevant and inadmissible.  Specifically, it claims that the testimony about the use of different flooring and sign location was not based on any violation of a code, statute, or standard but was instead based on the witness's personal preferences.

Generally, expert testimony is admissible if (1) the proffered expert is qualified by knowledge, skill, experience, training, or education in a field that has at least a modicum of reliability; and (2) the testimony will tend to assist the jury in understanding the evidence.  
Dotto v. Okan
, 269 Ill. App. 3d at 808, 810 (1995).  The weight to be assigned to an expert opinion is for the jury to determine in light of the expert's credentials and the factual basis of his opinion.  
Treadwell v. Downey
, 209 Ill. App. 3d 999, 1003 (1991).  Because the jury is not required to accept an expert's opinion, allowing him to testify as to the ultimate issue in a case, such as negligence, does not usurp the jury's function.  
Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.
, 49 Ill. 2d 118, 122 (1971); 
Stringham v. United Parcel Service, Inc.
, 181 Ill. App. 3d 312, 323 (1989).  Trial courts are given discretion in deciding whether to admit expert testimony, and reviewing courts will find error only where such discretion has been abused.  See 
Suich v. H & B Printing Machinery, Inc.
, 185 Ill. App. 3d 863, 875 (1989).  Moreover, an erroneous evidentiary ruling does not require reversal unless the error was prejudicial.  
Bafia v. City International Trucks, Inc.
, 258 Ill. App. 3d 4, 10 (1994).  

Here, we find no abuse of discretion in the trial court's decision to allow the plaintiff's expert testimony.  Although Pickus did not testify that the use of the type of flooring or the location of the sign violated any statute, ordinance, or code, the clear import of his testimony was that the type of tile used and the placement of the sign amounted to a hazardous condition.  Furthermore, he also testified that his opinions were based on a reasonable degree of certainty in the profession of architecture.  Courts in other contexts have permitted expert testimony that a condition is unreasonably dangerous, without reference to safety codes or statutes.  See, 
e.g.
, 
Merchants National Bank
, 49 Ill. 2d at 120, 122 (holding proper plaintiff's expert testimony that defendant's railroad crossing was "very inadequately protected"); 
Anderson v. Chesapeake & Ohio Ry. Co.
, 147 Ill. App. 3d 960, 975 (1986) (holding proper plaintiff's expert testimony that railroad crossing was "extrahazardous"); 
Crump v. Universal Safety Equipment Co.
, 79 Ill. App. 3d 202, 206, 211 (1979) (allowing testimony by mechanical engineer that failure to equip grinding machine with guard resulted in unreasonably dangerous condition); 
Kerns v. Engelke
, 54 Ill. App. 3d 323, 337 (1977) (holding proper testimony by agricultural safety engineer that farm equipment was "unreasonably dangerous").  Based on the above authorities, we hold that the trial court did not abuse its discretion in allowing Pickus to testify that the type of tile and the placement of the warning sign made for a hazardous condition and that he would have used different flooring and placed the sign elsewhere.

Bucheleres v. Chicago Park District
, 171 Ill. 2d 435 (1996), relied upon by the defendant, is not supportive of its position.  There, the supreme court found that the trial court correctly granted the defendant's motion to strike the plaintiff's expert's affidavit based on the requirement of Supreme Court Rule 191 (145 Ill. 2d R. 191) that the expert's opinion consist of admissible facts.  
Bucheleres
, 171 Ill. 2d at 462.  In that case, the danger of diving into water of an unknown depth was open and obvious.  
Bucheleres
, 171 Ill. 2d 435.  Thus, the affidavit of the expert referring to standards purportedly requiring park districts to locate submerged hazards or prohibit diving was not relevant.  
Bucheleres
, 171 Ill. 2d at 461-63.  It also lacked foundation.
  
Bucheleres
, 171 Ill. 2d at 461-63.  Unlike the expert's opinion in 
Bucheleres
, Pickus's opinion that a hazardous condition existed was based on a reasonable degree of professional certainty.  The defendant does not point to anything impeaching that testimony.  Accordingly, we are unable to say that the trial court abused its discretion in allowing the testimony.

The defendant next argues that the plaintiff failed to present any evidence that the water on the floor was deposited there by one of the defendant's employees or that it was present for a sufficient amount of time prior to the plaintiff's fall to charge the defendant with constructive notice.  In response, the plaintiff does not cite any case law but argues that she presented evidence that the liquid on the tile floor was deposited by the defendant's employee since there was evidence that Norman may have mopped the floor shortly before the accident.  

The defendant relies on the rationale set forth in 
Thompson v. Economy Super Marts, Inc.
, 221 Ill. App. 3d 263 (1991), 
Hresil v. Sears, Roebuck & Co.
, 82 Ill. App. 3d 1000 (1980), and 
Hayes v. Bailey
, 80 Ill. App. 3d 1027 (1980).  In 
Thompson
, the plaintiff slipped and fell on a lettuce leaf and a spot of water on the floor of the produce section of the defendant’s grocery store.  
Thompson
, 221 Ill. App. 3d at 263.  She presented no evidence as to how long the lettuce leaf or water had been there or who had placed it there.  
Thompson
, 221 Ill. App. 3d at 264.  In affirming a directed verdict for the defendant, the appellate court set forth the applicable law as follows:

"It is well settled that a defendant owes a business invitee on the defendant’s premises a duty to exercise ordinary care in maintaining the premises in a reasonably safe condition.  (
Ward v. K mart Corp.
 (1990), 136 Ill. 2d 132, 554 N.E.2d 223; 
Perminas v. Montgomery Ward & Co.
 (1975), 60 Ill. 2d 469, 328 N.E.2d 290.)  Where a business invitee is injured by slipping on the premises, liability may be imposed if the substance was placed there by the negligence of the proprietor or his servants, or, if the substance was on the premises through acts of third persons or there is no showing of how it got there, liability may be imposed if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered.  (
Olinger v. Great Atlantic & Pacific Tea Co.
 (1961), 21 Ill. 2d 469, 173 N.E.2d 443; 
Wroblewski v. Hillman’s, Inc.
 (1963), 43 Ill. App. 2d 246, 193 N.E.2d 470.)  Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive; whereas, if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor.  
Blake v. Dickinson
 (1975), 31 Ill. App. 3d 379, 332 N.E.2d 575.

Where there is proof that the foreign substance was a product sold or related to the defendant’s operations, and the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that the defendant or his servants, rather than a customer, dropped the substance on the premises, the trial court should allow the negligence issue to go to the jury.  (
Donoho v. O’Connell’s, Inc.
 (1958), 13 Ill. 2d 113, 148 N.E.2d 434.)  However, even where there is proof that the foreign substance was related to the defendant’s business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury, the defendant is entitled to a directed verdict, such evidence being insufficient to support the necessary inference."  
Thompson
, 221 Ill. App. 3d at 265-66.

In the instant case, there was no evidence that the water on the defendant's tile flooring was placed there by the defendant, nor was there evidence adduced of actual notice.  However, we are of the opinion that the case was properly left for determination by a jury because some evidence was presented of the defendant's constructive notice.  In that regard, the plaintiff's sister testified that she encountered the area hours before the plaintiff's fall and there were no mats on the floor at that time and water covered the floor in the same location.  The defendant presented no evidence that this water was cleared away.  The plaintiff and other witnesses testified that mats were not on the floor at the time of the plaintiff's fall and the pool area was still open.  On the other hand, the defendant's maintenance man testified that mats were always placed in the area while the pool was open.  Thus, a question of credibility existed for the jury to resolve with respect to the defendant's constructive knowledge of the dangerous condition.  Viewing the evidence in the light most favorable to the plaintiff, as we are required to do at this stage of the proceeding, we conclude that the defendant has failed to establish that no verdict contrary to its position could ever stand.  The cases cited by the defendant, 
Thompson
, 
Hresil
 and 
Hayes
, are all distinguishable because in those cases the plaintiffs failed to present any evidence of the defendants' constructive notice.

Next, the defendant argues that it was entitled to a jury instruction on the duty of care owed to a trespasser because it presented evidence that the plaintiff entered the sauna area after the posted hours, thus exceeding her invitation as a guest.  In response, the plaintiff argues that, although a sign was posted showing the pool hours, there was nothing to indicate that the pool area or the area in which she fell was closed at 10 p.m.

A trial court must instruct the jury on all issues raised by the evidence.  
Swartz v. Sears, Roebuck & Co.
, 264 Ill. App. 3d 254, 265 (1993).  A party has a right to have a jury instructed on its theory if there is some evidence in the record to support the theory.  
Caballero v. Royston
, 219 Ill. App. 3d 477, 481 (1991).  However, the determination of which issues have been raised is within the court's discretion, and, where there is no evidence to support an issue, a trial court's refusal to instruct on that issue is proper.  
Swartz
, 264 Ill. App. 3d at 265.

Here, we agree with the plaintiff that, while there was evidence presented that a sign indicated that the pool was to be closed at 10 p.m., there was no sign indicating that the pool area or the hallway where the plaintiff was attempting to walk was closed at 10 p.m.  Thus, we find the defendant's argument to be without merit.  We also note that it is apparent from the record that the latest the plaintiff's injury could have occurred was 10:15 p.m., and it may have occurred much earlier.  We find that, as a matter of law, the plaintiff, a registered guest at the hotel, was not a trespasser under the circumstances presented here, 
i.e.
, where she was walking in a direction leading her away from the defendant's pool to find her husband shortly after the time the pool was purportedly closed.

The defendant next argues that the trial court erred in excluding the defendant from presenting evidence that the plaintiff had consumed alcohol on the day of her fall.  The record reveals that the plaintiff stated in an answer to an interrogatory that she had a "toast of champaign [
sic
] at the beginning of the reception and a glass of wine during the meal."  An emergency room record revealed that there was a smell of alcohol on the plaintiff's breath.  The defendant argues that it should have been allowed to present this to the jury and argue that the plaintiff was intoxicated at the time of the fall.

The general rule governing the admissibility of evidence pertaining to the mere consumption of alcohol is that such evidence may not be introduced unless actual intoxication can be proved.  
Marshall v. Osborn
, 213 Ill. App. 3d 134, 142 (1991).  A party is required to show supporting evidence of actual impairment of physical or mental capabilities, and mere involvement in an accident is not indicative of impairment.  
Chubb/Home Insurance Cos. v. Outboard Marine Corp.
, 238 Ill. App. 3d 558, 570-571 (1992).  The evidence of impairment can be shown directly through the testimony of the person drinking, or circumstantially, through opinion testimony of a person who observed the subject's intoxication, expert testimony, or through evidence of erratic behavior such as bizarre or unusual driving patterns.  
Chubb/Home Insurance Companies
, 238 Ill. App. 3d at 570.

At its offer of proof on this issue, the defendant did not present any evidence of intoxication either directly through observations of third persons or through expert testimony.  The mere fact that the plaintiff's breath may have smelled of alcohol was consistent with her answer to the defendant's interrogatory and was not, without more, supporting evidence of intoxication.  Applying the above-cited principles set forth in 
Chubb/Home Insurance Companies
, we conclude that, in view of the lack of supporting evidence of intoxication, the trial court did not abuse its discretion in prohibiting the defendant from presenting evidence of the plaintiff's alcohol consumption.

Last, the defendant argues that the trial court erred in awarding $3,050.12 in costs to the plaintiff.  The defendant maintains that this award included expenses associated with subpoenaing and copying medical records, court reporter attendance and transcription fees for discovery depositions, editing of video- taped evidence depositions, and enlarging to poster size various photographs used at trial.  He contends that there was no authority in Illinois allowing the plaintiff to recover from the defendant for these items.

We agree.  Generally, a successful litigant is not entitled to recover the ordinary expenses of litigation.  
Galowich v. Beech Aircraft Corp.
, 92 Ill. 2d 157, 166 (1982); 
Boyle v. Manley
, 263 Ill. App. 3d 200, 206 (1994).  Section 5--

108 of the Code of Civil Procedure provides that a prevailing plaintiff in any action for damages personal to the plaintiff may recover his "costs."  735 ILCS 5/5--108 (West 1998).  The definition of "costs" is not defined by this section and is left for the courts to determine.  
Boyle
, 263 Ill. App. 3d at 206.  Supreme Court Rule 208 provides that certain expenses relating to depositions may be taxed as costs.  134 Ill. 2d R. 208.  The supreme court stated in 
Galowich
 that Rule 208 authorizes "the trial court to tax as costs, in its discretion, the expenses only of those depositions necessarily used at trial."  
Galowich
, 92 Ill. 2d at 166.  The term "necessarily used at trial" has been interpreted to mean that deposition costs cannot be taxed unless the use of the deposition was "indispensable" to the trial, as when a witness dies or disappears.  
Boyle
, 263 Ill. App. 3d at 206.

Here, the trial court denied all the costs listed in the plaintiff's motion for an award of costs except for "[the] filing fee, costs for subpoenaed medical records, and costs associated with evidence depositions used at trial."  However, the standard for assessing costs is not whether the depositions were used at trial but whether they were indispensable to the trial, such as when a witness dies or disappears.  See 
Boyle
, 263 Ill. App. 3d at 206.  The plaintiff did not offer any reason for the unavailability of its expert witness.  Thus, the plaintiff failed to show that that deposition and related expenses were indispensable to the trial.  The expenses awarded for the other depositions and related expenses were even more inappropriate because there was no claim made that the deponents were unavailable to testify at trial.  Thus, the portion of the costs awarded for depositions must be vacated.  Additionally, we note that the plaintiff failed to offer any authority on appeal or make any argument in support of a claim that she should be entitled to the other costs challenged by the defendant.  Therefore, we vacate the portion of the court's award of costs attributable to the medical records.  Accordingly, we modify the trial court's award of costs to $377 for the filing fee.

For the foregoing reasons, we hold that the trial court properly denied the defendant's motion for a directed verdict and its posttrial motion for a judgment notwithstanding the verdict.  Accordingly, we affirm the judgment of the circuit court of Lake County entering judgment on behalf of the plaintiff based on the jury's verdict.  We modify the trial court's award of costs as stated above.

Affirmed as modified.

COLWELL and HUTCHINSON, JJ., concur.