LINDA L. TURNER, Indiv. and as Guardian of Brian Wong *et al.*, Minors, Plaintiffs-Appellees, v. LARRY L. WILLIAMS *et al.*, Defendants-Appellants.

Second District   No. 2—00—1438

Opinion filed December 17, 2001.

James T. Ferrini, Edward M. Kay, and Melissa A. Murphy-Petros, all of

Clausen Miller P.C., of Chicago, and Thomas H. Ryerson, of Clausen Miller P.C., of Wheaton, for appellants.

T. Patrick Rice, of Rice & Mathys, of Wheaton, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

In this automobile collision case, defendants, Larry Williams and C.R. England & Sons, Inc., appeal the judgment entered on the jury's verdict in favor of plaintiff, Linda L. Turner, individually and as guardian of Brian Wong and Kevin Wong, minors, in the amount of $5,863,115.15. On appeal, defendants contend that the trial court erred in (1) failing to consolidate a related wrongful death action; (2) instructing the jury on loss of a normal life as an element of damages; and (3) excluding the testimony of defendants' accident reconstruction expert. Defendants seek the reversal of the jury's verdict and a new trial or, alternatively, a judgment notwithstanding the verdict, a new trial on damages, or a remittur in the amount of $3,700,000. We reverse and remand for a new trial.

On June 7, 1998, Brian Wong, age 15, and Kevin Wong, age 13, were passengers in a Mazda van driven by their father, Jack Wong. Mr. Wong was traveling westbound on Route 38, or Roosevelt Road. While attempting to make a left turn at the intersection of Route 38 and Fabyan Parkway in West Chicago, the van was struck by a semitractor trailer driven by defendant Larry Williams and owned by C.R. England & Sons. Jack Wong died in the collision. Brian Wong and Kevin Wong were severely injured. They have no memory of the collision.

On August 31, 1998, Linda L. Turner, as guardian of Brian Wong and Kevin Wong, filed a negligence action against defendants, Williams and C.R. England & Sons. Although the record does not reflect that the estate of Jack Wong was ever a party to the suit, the trial court approved the minor plaintiffs' petition for settlement on September 24, 1998. The plaintiffs entered into a settlement with the automobile insurance carrier for Jack Wong, not the estate of Jack Wong, for the policy limits of $200,000, with $100,000 being awarded to each minor plaintiff.

On April 28, 2000, Yok Tsun Gong, the administrator of the estate of Jack Wong, filed a separate wrongful death action arising from the same automobile collision against defendants, Williams and C.R. England & Sons. Since plaintiffs Brian Wong and Kevin Wong were the sole heirs of their father, Jack Wong, the wrongful death action sought to compensate plaintiffs for damages sustained as a result of the death of their father.

On May 23, 2000, defendants moved to consolidate the wrongful death action with the negligence action brought on plaintiffs' behalf. They argued that allowing the actions to proceed separately would allow plaintiffs to split their cause of action and essentially obtain a double recovery for the same injury. The trial court denied the motion to consolidate.

Prior to trial, defendants filed a motion *in limine* to bar plaintiffs from introducing evidence of emotional damage sustained by the minor plaintiffs as a result of the death of their father and other evidence concerning damages available under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2000)). The motion asserted that the minor plaintiffs could not be compensated in the negligence action for emotional damage sustained in the automobile collision due to the death of their father because it is not an element of their claim for negligence. The motion was denied.

Plaintiffs filed a motion *in limine* to exclude the testimony of defendants' accident reconstruction expert, Wesley Grimes. The motion asserted that the testimony of Mr. Grimes should be barred because there was an inadequate foundation to support his testimony. The motion was granted, and Mr. Grimes was barred from testifying at trial.

The case proceeded to trial. In their case in chief, plaintiffs called five eyewitnesses to the collision and numerous damage witnesses, including five treating physicians, a treating psychology clinician, two treating speech pathologists, and two guidance counselors at plaintiffs' school. Defendants called two physicians who conducted independent medical examinations on plaintiffs in their case in chief.

The trial court instructed the jury on loss of a normal life as an element of damages, among other things. The jury entered a verdict in favor of Brian Wong and against defendants in the amount of $2,480,000, itemized as follows: $1,500,000 for loss of a normal life; $30,000 for disfigurement; $600,000 for past pain and suffering; and $350,000 for future pain and suffering. The jury entered a verdict in favor of Kevin Wong in the amount of $3,390,000, itemized as follows: $2,200,000 for loss of a normal life; $40,000 for disfigurement; $800,000 for past pain and suffering; and $350,000 for future pain and suffering. A verdict in favor of Linda Turner was returned in the amount of $193,115.15, which reflected medical expenses paid for Brian Wong and Kevin Wong.

The jury answered a special interrogatory that apportioned negligence at 60% for defendants Williams and C.R. England and 40% for Jack Wong. Since Jack Wong was not a party to the suit, the special interrogatory was given to test the jury's verdict against defendants' theory that Jack Wong was the sole proximate cause of the collision.

Judgment was entered on the jury's verdict in the amount of $5,863,115.15; that amount provided for a setoff against the verdict in favor of each minor plaintiff in the amount of $100,000 each, which reflected the settlement reached with Jack Wong's insurance carrier prior to trial. Following the denial of defendants' posttrial motion, they filed a notice of appeal.

## I. CONSOLIDATION

Defendants first contend that the trial court erred in failing to consolidate the wrongful death action filed on behalf of Jack Wong, deceased, with the negligence action filed on behalf of the minor plaintiffs. Defendants contend that, since plaintiffs in the present action were allowed to introduce evidence concerning the emotional damage sustained by the minor plaintiffs due to their father's death in the collision and to argue that they should be compensated for such grief, the failure to consolidate the two cases was prejudicial in that it allows for a double recovery for these damages in both suits.

Defendants claim that this issue should be decided under the *de novo* standard of review through a *res judicata* analysis, which indicates that plaintiffs impermissibly split the wrongful death action from the negligence action by filing two separate suits. We disagree. The issue of *res judicata* is not determinative of the issue of whether the two causes of action should have been consolidated.

In all of the cases cited by defendants, the doctrine of *res judicata* was used defensively and a second, subsequent cause of action was barred due to the resolution of an earlier cause of action involving the same parties and the same issues. See, *e.g.*, *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285 (1992); *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290 (1998); *Marvel of Illinois, Inc. v. Marvel Contaminant Control Industries, Inc.*, 318 Ill. App. 3d 856 (2001); *Marshall v. Mayflower, Inc.*, 817 F. Supp. 922 (D.C. Kan. 1993). None of the cases cited by defendants address the issue of the trial court's failure to consolidate two cases arising from the same occurrence that were pending simultaneously.

■ Section 2—1006 of the Code of Civil Procedure provides for the consolidation of actions pending in the same court "as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2—1006 (West 2000). The trial court has broad discretion in determining the propriety of consolidation. *Horn v. Rincker*, 84 Ill. 2d 139, 147 (1981). Its decision will not be overturned on review absent a finding of an abuse of discretion. *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001 (1995).

■ Consolidation has three different applications: (1) where several actions are pending involving substantially the same subject matter, the court may stay proceedings in all but one and see whether the disposition of the one action may settle the others, thereby avoiding multiple trials on the same issue; (2) where several actions involve an inquiry into the same event in its general aspects, the actions may be tried together, but with separate docket entries, verdicts, and judgments, the consolidation being limited to a joint trial; and (3) where several actions are pending that might have been brought as a single action, the cases may be merged into one action, thereby losing their individual identity, to be disposed of in one suit. *Ad-Ex, Inc. v. City of Chicago*, 247 Ill. App. 3d 97 (1993). Where separate causes are of the same nature, involve the same or like issues and depend largely upon the same evidence, as in the third example noted above, consolidation is not an abuse of discretion. *Peck v. Peck*, 16 Ill. 2d 268, 275 (1959).

The negligence action brought on behalf of the minor plaintiffs and the wrongful death action involve the same automobile collision. The resolution of both cases depends on the same evidence on liability. In both cases, plaintiffs will present evidence to establish that defendants were negligent in colliding with the vehicle driven by Jack Wong carrying the minor Wong children as passengers. Thus, the only issues that differ in the two cases are the amount of damages and the apportionment of liability.

■ According to the itemized verdict, the minor plaintiffs were compensated for the following elements of damage: loss of a normal life, disfigurement, pain and suffering experienced, and pain and suffering reasonably certain to be experienced in the future. According to the verdict form, plaintiffs were not compensated for emotional distress experienced under the "zone of physical danger" test enunciated in *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546 (1983). Under this rule, a bystander must be in the zone of physical danger to the direct victim created by a defendant's negligent conduct, have a reasonable fear for his own safety based on a high risk to him of physical impact, and show physical injury or illness as a result of the emotional distress caused by the defendant's negligence.

Nevertheless, the trial court allowed plaintiffs to introduce evidence concerning the emotional distress suffered by the minor plaintiffs resulting from the death of their father. Although the minor plaintiffs did not remember the collision itself, and therefore could not have suffered emotional anguish stemming from memories of the collision, the record reflects that the treating health care providers testified that the minors experienced grief and related emotional difficulties due to the loss of their father. Brian Wong's treating psychology

clinician related behavioral problems due to cognitive deficits *and* feelings of complicated grief over the loss of his father. The therapist testified of a therapy program designed to cope with grief reactions. In addition, both minors testified of their feelings of loss over the death of their father. In closing argument, plaintiffs' counsel asked the jury to compensate the minor plaintiffs for the pain and suffering experienced due to the death of their father, including the grief, sadness, and emotional damages associated with losing their father in a "collision that should not have occurred," the fact that they "never got to say good-bye," and "the death of the father, the sadness and the grief."

■ Since the minor plaintiffs were directly injured in the automobile collision and have no memory of the collision, all damages they sustained were a consequence of their own injuries. As persons directly injured as a result of the alleged negligent actions of defendants in colliding with the vehicle driven by Jack Wong, the minor plaintiffs are precluded from recovering damages under the zone of danger rule enunciated in *Rickey*. See *Corgan v. Muehling*, 143 Ill. 2d 296 (1991) (holding that the *Rickey* zone of danger test does not apply to plaintiffs that are directly injured and are not merely bystanders). Although it has been held that a plaintiff who is both a direct victim and a bystander can recover for both elements of damage in separate counts, plaintiffs are precluded from doing so in this case. Both minor plaintiffs have no memory of the collision and, therefore, could not have sustained emotional distress from being in the zone of physical danger in the collision. See *Hayes v. Illinois Power Co.*, 225 Ill. App. 3d 819 (1992). Furthermore, plaintiffs' complaint does not allege the negligent infliction of emotional distress.

■ Under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2000)), the minor plaintiffs, as the sole surviving heirs or next of kin of Jack Wong, are entitled to recover for the pecuniary losses incurred as a result of the death, including money, benefits, goods, services, and society. Although those damages do not include grief or mental anguish resulting from the death, damages for loss of society are recoverable, which include the deprivation of love, companionship, and affection from the deceased person. *See f v. Sutkus*, 205 Ill. App. 3d 312, 318 (1990). Although bereavement itself is not directly recoverable as an element of damage, testimony concerning beareavement is relevant to a claim for loss of society. *Uhr v. Lutheran General Hospital*, 226 Ill. App. 3d 236 (1992). It is not relevant to the negligence claim without evidence that plaintiffs remembered the collision.

The fact that plaintiffs had no memory of the collision is significant. Contrary to plaintiffs' argument that plaintiffs will experience

grief and sadness "every time they look in the mirror and they see the scars," without any memory of the collision, the only emotional injury plaintiffs could have suffered did not stem from feelings related to the facts of the collision itself. Instead, evidence was presented to establish that plaintiffs sustained emotional injury as a result of the death of their father. However, this evidence was not relevant to the damages sustained by plaintiffs. This evidence is relevant to the damages sustained by the minor plaintiffs in the unconsolidated wrongful death suit.

■ Both the wrongful death and the negligence actions involve the same issues concerning liability. Plaintiffs' counsel acknowledged this fact at the hearing on the motion to consolidate, indicating that "[e]verything is the same except in this case we're talking about damages to the two boys versus the wrongful death of the father." Although the damages sustained by the minor plaintiffs from their own injuries (resulting in the negligence suit) and from the death of their father (resulting in the wrongful death suit) are not identical, the evidence presented on the damages in the negligence suit improperly overlapped with the evidence that will be presented on the damages in the wrongful death suit. By trying the two suits separately, and assuming the proper consideration of evidence in the wrongful death suit, it is apparent that a double recovery on the damages for pain and suffering in the negligence suit and loss of society in the wrongful death suit would arise.

In denying the motion to consolidate, the trial court expressed concern that continuing the scheduled trial date on the negligence suit to allow the two suits to be consolidated for trial would interrupt the plaintiffs' school year. The court was also concerned that consolidating the two cases would require the jury to "have too much on its plate." With respect to defendants' contention that the failure to consolidate would increase the potential for double recovery, the court indicated that the jury instructions would protect the interests of defendants.

■ Here, the negligence and wrongful death causes of action depend largely on the same evidence, including that on damages. In our view, the limiting instruction that was given—that the jury not consider "the loss of society due to the death of Jack Wong" or "the relationship between either Brian Wong or Kevin Wong and their father" in awarding damages for past and future pain and suffering—confuses, rather than clarifies, the issues. Loss of society is not an element of damage in the negligence claim, and, therefore, evidence of such damage was not relevant. The prejudicial effect of the jury's verdict in this case, as well as the virtual certainty for a double recovery on damages given the evidence presented at trial, indicates

that the two causes of action should have been consolidated for trial. The trial court's denial of the motion to consolidate was an abuse of discretion. Therefore, we reverse the trial court's order denying defendants' motion to consolidate. We also reverse the judgment entered on the jury's verdict and remand the cause to the trial court for a new trial on all issues to be conducted as a consolidated trial on both the negligence and wrongful death causes of action.

## II. JURY INSTRUCTION—LOSS OF A NORMAL LIFE

In conjunction with its assertion that the trial court erred in failing to consolidate the wrongful death action with the negligence action, defendants assert that the trial court erred in giving the jury an instruction on loss of a normal life rather than disability.

■ Contrary to plaintiffs' contention that this issue has been waived on appeal for failure to object at the instruction conference, the record is clear that an objection to the term "loss of a normal life" in lieu of disability was raised and that the instruction was given over this objection. Further, the issue was raised in defendants' posttrial motion. The failure of defendants to tender an alternate instruction on disability does not result in the waiver of this issue either. At the instruction conference, the trial court indicated that it was plaintiffs' option to use either the term "disability" or "loss of a normal life" as the damage instruction. Under these circumstances, the failure to tender an alternate instruction on disability does not result in the waiver of this issue on appeal. Therefore, we will consider the issue of whether the trial court erred in giving the loss of a normal life instruction rather than the disability instruction.

■ The plaintiff has the right to have the jury clearly and fairly instructed on any theory supported by the evidence. To justify an instruction, some evidence in the record must support the theory. The trial court has discretion in determining what issues are raised by the evidence. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 100 (1995). Giving or denying a jury instruction is also within the trial court's discretion. A new trial will be granted because of improper jury instructions only where the party has suffered serious prejudice from the offending instruction. *Thompson v. MCA Distributing, Music Corp. of America*, 257 Ill. App. 3d 988, 991 (1994). In determining the adequacy of jury instructions, this court considers whether, considering the instructions as a whole, the jury was fairly, fully, and comprehensively informed as to the relevant principles. *Campbell v. Wagner*, 303 Ill. App. 3d 609, 611 (1999).

Defendants claim that under *Tornabene v. Paramedic Services of Illinois, Inc.*, 314 Ill. App. 3d 494 (2000), the use of the loss of a normal

life instruction rather than the disability instruction is contrary to Illinois law and that the trial court's use of this instruction warrants a new trial. The *Tornabene* court relied on the prior case of *Torres v. Irving Press Inc.*, 303 Ill. App. 3d 151 (1999), which disapproved of the use of the term "loss of a normal life" in the damage instruction. The *Tornabene* court rejected the rationale of *Smith v. City of Evanston*, 260 Ill. App. 3d 925 (1994), which, in determining that the trial court erred in giving the loss of a normal life instruction, held that the term "loss of a normal life" more accurately described the evidence. The court's holding in *Torres* was based on the comments to IPI Civil (1995) No. 30.04, the disability instruction, which recommended the use of the pattern instruction on disability rather than a nonpattern instruction on loss of a normal life (Illinois Pattern Jury Instructions, Civil, No. 30.04 (1995)) (hereinafter IPI Civil (1995)).

Since *Smith*, *Torres*, and *Tornabene* were decided, the 2000 edition of the Illinois Pattern Jury Instructions was published. Illinois Pattern Jury Instructions, Civil (2000). Included in this new edition is an instruction that gives disability or loss of a normal life as alternatives. Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2000) (hereinafter IPI Civil (2000)). The Notes on Use to IPI Civil (2000) No. 30.04.01 indicate that the term "loss of a normal life" can be used rather than "disability" if the trial court determines that *Smith* is applicable and that "loss of a normal life" more accurately describes the element of damages claimed and would be less confusing to the jury. IPI Civil (2000) No. 30.04.01, Notes on Use.

The addition of instruction IPI Civil (2000) No. 30.04.01, which allows either loss of a normal life or disability to be given as an instruction, depending on the nature of the evidence at trial, illustrates that the use of an instruction on loss of a normal life is not contrary to Illinois law. Indeed, loss of a normal life has been recognized by this court as an element of compensable damage. *Zuder v. Gibson*, 288 Ill. App. 3d 329 (1997); see also *Hiscott v. Peters*, 324 Ill. App. 3d 114, 127 (2001).

Here, however, the trial court gave plaintiffs the option of choosing either disability or loss of a normal life. It does not appear that any consideration was given as to which term more accurately described the damages or whether the holding of *Smith* was applicable.

Since we have already determined that error occurred that warrants a new, consolidated trial, we have no occasion to determine whether the trial court erred in giving the loss of a normal life instruction rather than the disability instruction. On remand, however, the trial court is directed to consider the tendered instruction in light of the "Notes on Use" and "Comment" sections to IPI Civil (2000) No. 30.04.01.

If the trial court determines that loss of a normal life more accurately portrays the evidence presented at trial and utilizes this alternative, IPI Civil (2000) No. 30.04.02 should also be given, which defines the term "loss of a normal life."

## III. EXPERT'S TESTIMONY

Defendants next contend that the trial court erred in excluding the testimony of their retained opinion witness, Wesley Grimes. Mr. Grimes is an accident reconstructionist. Based on two computer programs and his own calculations, Mr. Grimes was to testify that defendant Williams was traveling 26 to 30 miles per hour at impact and 33.5 miles per hour plus or minus 10% before braking; that Jack Wong was traveling between 18 to 22 miles per hour at impact; that defendant Williams was between 150 to 242 feet from the point of impact when Wong moved and braking began; and that defendant Williams had approximately 3 to 4 seconds to react to the movement of Mr. Wong. Based on these findings, Mr. Grimes was to testify that the cause of the collision was the Wong vehicle's turning in front of defendants' vehicle.

Plaintiffs filed a motion *in limine* to bar the testimony of Mr. Grimes. The motion asserted that the testimony of Mr. Grimes was speculative and not in compliance with *Wilson v. Clark*, 84 Ill. 2d 186 (1981).

The trial court granted the motion and barred Mr. Grimes from testifying. The basis for the court's ruling, however, was not *Wilson v. Clark*. Instead, the court excluded the testimony of Mr. Grimes for the following reasons: there was sufficient eyewitness testimony regarding the speed of the vehicles and an expert's testimony was not needed in these areas; there was insufficient foundation for the computer-generated evidence under the *Frye* standard; the opinions lacked sufficient foundation because they did not take into account the color of the traffic lights at the point of impact; the opinions lacked sufficient foundation because the witness did not know the starting point of the vehicle and the markings on the roadway; and the disclosures of Mr. Grimes's opinions required by Supreme Court Rules 213(f) and (g) (177 Ill. 2d Rs. 213(f), (g)) did not state that his computer programs were "reliable."

▇▇ Generally, the opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field that has "at least a modicum of reliability" and the testimony would assist the jury in understanding the evidence. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 799 (1999). However, an expert's opinion is only as valid as the reasons

for the opinion. *Soto v. Gaytan*, 313 Ill. App. 3d 137 (2000). Thus, the party calling an expert witness must lay a foundation sufficient to establish that the information upon which the expert bases his opinion is reliable. *Hiscott*, 324 Ill. App. 3d at 122. For reconstruction testimony to be admissible, there must be sufficient data about the accident in evidence to provide a reasonable basis for the expert's opinion. *Hiscott*, 324 Ill. App. 3d at 123. The admission of an expert's testimony lies with the sound discretion of the trial court. *Wiegman*, 308 Ill. App. 3d at 799. The trial court's ruling regarding the admissibility of an expert's opinion will be reversed when the error was prejudicial or the result of the trial was materially affected. *Hiscott*, 324 Ill. App. 3d at 122.

■■■ The trial court's determination that the testimony of Mr. Grimes should be barred because there was sufficient evidence from the eyewitnesses concerning the speed of the vehicles was an abuse of discretion. The existence of eyewitness testimony is not a conclusive factor in determining whether accident reconstruction testimony is admissible. *Watkins v. Schmitt*, 172 Ill. 2d 193, 206 (1996). Instead, the court must determine whether, in addition to eyewitness testimony, an expert's reconstruction testimony would assist the jury in understanding scientific principles and enable it to make factual determinations. *Watkins*, 172 Ill. 2d at 205.

Here, there were five eyewitnesses to the occurrence, including defendant Williams. The witnesses each viewed the occurrence from different vantage points. However, the testimony from each of these witnesses concerning the speed of defendant Williams and Jack Wong prior to and at impact was contradictory. One witness estimated defendant's speed at 45 miles per hour. Defendant estimated his speed as 40 miles per hour prior to applying his brakes and 35 to 40 miles per hour after braking. The remaining witnesses either could not estimate speed or could do so only with vague descriptive terms such as "pretty fast" or "rather fast." Additionally, each witness saw defendants' vehicle at different points in time and at different distances from the crash site.

In our view, the testimony from the eyewitnesses was sufficiently confusing that the testimony of Mr. Grimes concerning the estimated speeds would assist the jury in sorting through the evidence presented and determine how the collision likely occurred. Mr. Grimes was to testify not only on estimated speeds but also on the amount of time defendant had to react. This issue could have been of import to the jury in understanding the testimony of the eyewitnesses that described the conditions such as speed and distance. See *Ketchum v. Dura-Bond Concrete, Inc.*, 179 Ill. App. 3d 820 (1989).

▆ Likewise, the trial court abused its discretion in excluding the testimony of Mr. Grimes because the computer-generated data used in formulating his opinions did not satisfy the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). In Illinois, the admission of scientific evidence is strictly governed by the standard enunciated in *Frye. People v. Eyler*, 133 Ill. 2d 173, 211 (1989); see also *People v. Miller*, 173 Ill. 2d 167 (1996) (declining to adopt the *Daubert* test (*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)) in place of the *Frye* test in Illinois). Simply stated, the *Frye* rule allows for the admission of evidence when the scientific principle that forms the basis of evidence has achieved general acceptance in the evidence's particular field. *Frye*, 293 F. at 1014.

▆ The issue of whether the computer programs utilized by Mr. Grimes in forming his opinions are reliable is not a *Frye* issue. The *Frye* standard is utilized to test novel scientific evidence with no prior history of reliability. The use of accident reconstruction testimony is not novel. In the offer of proof made concerning the proposed testimony of Mr. Grimes, he testified that the computer programs used, EDCRASH and EDSMAC4, are "widely used and accepted in the field of crash analysis."

Although Mr. Grimes' proposed testimony concerning the reliability of the computer programs and their use and acceptance in the field of accident reconstruction was not referenced in defendants' answers to Supreme Court Rule 213 interrogatories, we do not believe that such omission warrants the exclusion of his testimony. Although a *Frye* hearing is not mandated, it is required in situations when the evidence at issue is not commonly recognized in the scientific field in which it belongs. *Donaldson v. Central Illinois Public Service Co.*, 313 Ill. App. 3d 1061, 1070 (2000). Any issue plaintiffs had concerning the testimony of Mr. Grimes and the *Frye* standard should have been addressed in a *Frye* hearing prior to trial. Since Supreme Court Rule 213 requires the disclosure of opinions intended to be expressed by a proposed expert at trial (177 Ill. 2d R. 213), it does not encompass the disclosure of testimony that would have been elicited had a *Frye* hearing been conducted prior to trial. The manner in which courts have utilized the *Frye* standard to test the reliability of proposed opinion testimony prior to trial leads us to conclude it was not intended to serve as the basis for the exclusion of a witness via a typical motion *in limine* brought and heard on the eve of trial without an evidentiary hearing.

Moreover, plaintiffs' motion *in limine*, which sought to exclude Mr. Grimes from testifying, asserted that his testimony was without

foundation because he did not input information extracted from the depositions in the computer programs and did not use certain information such as the color of the lights. In our view, the information used or not used by Mr. Grimes was not a sufficient basis to bar his testimony. This issue could have been adequately brought to light before the jury on cross-examination. Mr. Grimes utilized information admitted in evidence to formulate his opinions. The fact that the information was then submitted to a computer does not render it without sufficient foundation.

For these reasons, we determine that the trial court abused its discretion in barring the testimony of Mr. Grimes. On remand, Mr. Grimes should be allowed to testify.

The judgment of the circuit court of Du Page County is reversed. The cause is remanded for a new trial on all issues with directions to consolidate *Gong v. Williams*, Du Page County circuit court No. 00—L—431, for retrial.

Reversed and remanded.

GEIGER and CALLUM, JJ., concur.