FIFTH DIVISION
February 24, 2006

No. 1-04-2851

| | | |
|---|---|---|
| DWAYNE NOAKES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 01 l 14502 |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | Honorable |
| CORPORATION, d/b/a Amtrak, | ) | Gay-Lloyd Lott, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

This action arises under the Federal Employers' Liability Act. 45 U.S.C. § 51 *et seq.*

(1988) (FELA). Plaintiff, Dwayne Noakes, appeals the trial court order granting defendant's

motion for directed verdict. We reverse and remand.

## BACKGROUND

Plaintiff was employed as a mechanic since 1988 by defendant, National Railroad

Passenger Corporation, which was doing business as Amtrak. After years of working there,

plaintiff developed bilateral carpal tunnel syndrome (CTS). Plaintiff's CTS was surgically

treated in August 1993 and September 1993, and plaintiff returned to his position as a mechanic with defendant in March 1994. In June 1995, plaintiff was diagnosed with bilateral rotator cuff tendonitis, ulnar nerve injury and repetitive motion micro trauma, as well as a reinjury of his carpal tunnel condition. Plaintiff resigned in July 1995.

The details of the procedural history of this case can be found in *Noakes v. National R.R. Passenger Corp.*, 312 Ill. App. 3d 965, 729 N.E.2d 59 (2000) (*Noakes I*). We will summarize that history here. Plaintiff originally sued defendant in 1993. In his original suit, plaintiff claimed that his duties at work caused his CTS. He voluntarily dismissed the action in 1998.

Plaintiff subsequently filed a two-count complaint. One count alleged that plaintiff's return to his work in 1994 aggravated the preexisting CTS and further caused him to develop shoulder and elbow complaints. The other count was a refiling of the original action and was dismissed as time-barred. This court affirmed that ruling in *Noakes I*. Thus, the instant case involves only the remaining count, which deals with alleged work-related injuries that occurred from March 1994 until July 1995. The case was finally tried in 2003.

At trial, plaintiff had four witnesses: himself; two treating physicians, Dr. Madhav and Dr. Sherin; and a vocational rehabilitation counselor, Terry Cordray. Defendant brought several motions *in limine* regarding the ability of plaintiff's witnesses to testify regarding his condition and the relationship of his work to the condition. Although certain of these motions had previously been denied by another judge when heard with defendant's motion for summary judgment, the trial judge revisited the issue. After a hearing, the trial court granted defendant's motions and ruled that the treating physicians could not testify that plaintiff's injuries were

caused or aggravated by his work. The trial court also granted defendant's motion to bar evidence that plaintiff's original CTS was caused by his work as a mechanic for defendant on the additional ground that this claim was barred by the statute of limitations and any evidence of the cause of plaintiff's preexisting CTS was irrelevant. Additionally, the trial court barred Cordray from expressing an opinion on the cause of plaintiff's CTS or from testifying that plaintiff's return to work for defendant aggravated his CTS.

On May 1, 2003, after plaintiff rested his case, defendant moved for a directed verdict on the ground that plaintiff failed to present a *prima facie* case for relief under FELA. The trial court granted defendant's motion and subsequently denied plaintiff's posttrial motion seeking relief from that ruling. Plaintiff filed this timely appeal.

ANALYSIS

Plaintiff argues on appeal that the trial court erred in excluding certain testimony and contends that, had the evidence in question been admitted, he would have established a *prima facie* case and no directed verdict would have been allowed. Thus, we shall consider whether the trial court erred in barring the testimony in question.

Generally, the decision of whether to admit expert testimony lies within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling will not be reversed. *Snelson v. Kamm*, 204 Ill. 2d 1, 24, 787 N.E.2d 796, 809 (2003); see also *Turner v. Williams*, 326 Ill. App. 3d 541, 553, 762 N.E.2d 70, 81 (2001) (admission of an expert's testimony lies within the sound discretion of the trial court and its ruling on the issue will be reversed when the error was prejudicial or the result of the trial was materially affected). This standard is also

applicable to lay testimony. See *Mulloy v. American Eagle Airlines, Inc.*, 358 Ill. App. 3d 706, 711-12, 832 N.E.2d 205, 210 (2005). (trial court is similarly vested with the discretion to determine relevance and admissibility of lay testimony and it does not err in excluding testimony which does not bear on matters at issue in the case).

The first issue we shall address is whether the trial court erred in granting defendant's motions *in limine* limiting the testimony of plaintiff's medical experts, Dr. Madhav and Dr. Sherin. Defendant contends that, in an FELA action, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), applies to the admissibility of the testimony of plaintiff's treating physicians. We disagree.

Where an FELA action is brought in state court, courts have noted that the admissibility of evidence is governed by state law. See, *e.g.*, *Marlow v. Atchison, Topeka & Santa Fe Ry.*, 671 P.2d 438 (Colo. App. 1983); *Padilla v. Southern Pacific Transportation Co.*, 131 Ariz. 533, 642 P.2d 878 (App. 1982) (and cases cited therein). Although state procedural rules must give way if they would lessen or destroy a federal substantive right (see, *e.g.*, *Castro v. Chicago Rock Island & Pacific R.R. Co.*, 83 Ill. 2d 358, 361, 415 N.E.2d 365 (1980), *cert. denied* 452 U.S. 941, 69 L. Ed. 2d 95, 101 S. Ct. 3086 (1981)), that is not the case here.

As the Illinois Supreme Court explicitly noted in *People v. Basler*, 193 Ill. 2d 545, 740 N.E.2d 1 (2000), Illinois courts follow *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). In *Frye*, the court observed as follows:

"Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this

1-04-2851

twilight zone the evidential force of the principle must be recognized, and while

courts will go a long way in admitting expert testimony deduced from a

well-recognized scientific principle or discovery, the thing from which the

deduction is made must be sufficiently established to have gained general

acceptance in the particular field in which it belongs." *Frye*, 293 F. at 1014.

See also *In re Marriage of Bates*, 212 Ill. 2d 489, 518, 819 N.E.2d 714, 729 (2004).

The use of the *Frye* test as the Illinois standard was reaffirmed by our supreme court in

*Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 77, 767 N.E.2d 314, 323 (2002).

 As the *Donaldson* court stated: "Illinois law is unequivocal: the exclusive test for the admission

of expert testimony is governed by the standard first expressed in *Frye v. United States*, 293 F.

1013 (D.C. Cir. 1923)." *Donaldson*, 199 Ill. 2d at 76-77, 767 N.E.2d at 323.  Under the *Frye*

standard, commonly called the "general acceptance" test, "scientific evidence is only admissible

at trial if the methodology or scientific principle upon which the opinion is based is 'sufficiently

established to have gained general acceptance in the particular field in which it belongs.' "

*Donaldson*, 199 Ill. 2d at 77, 767 N.E.2d at 324, quoting *Frye*, 293 F. at 1014.

Nevertheless, courts apply the *Frye* test only where the scientific principle, technique, or

test offered by the expert to support his or her conclusion is "new" or "novel." *In re Marriage of*

*Bates*, 212 Ill. 2d 489, 519, 819 N.E.2d 714, 730 (2004); *People v. Basler*, 193 Ill. 2d 545,

550-51, 740 N.E.2d 1 (2000).  As our supreme court has explained:

"*Frye* does not make the trial judge a 'gatekeeper' of all expert opinion

testimony.  The trial judge's role is more limited. The trial judge applies the *Frye*

5

test only if the scientific principle, technique or test offered by the expert to support his or her conclusion is 'new' or 'novel.' [Citation.] Only novelty requires that the trial court conduct a *Frye* evidentiary hearing to consider general acceptance. We recognize that a 'new' or 'novel' scientific technique is not always easy to identify, especially in light of constant scientific advances in our modern era. Generally, however, a scientific technique is 'new' or 'novel' if it is 'original or striking' or does 'not resembl[e] something formerly known or used.' " *Donaldson*, 199 Ill. 2d at 78-79, 767 N.E.2d at 324-25, quoting Webster's Third New International Dictionary 1546 (1993).

No *Frye* hearing was conducted in the instant case, but there was no need to conduct a *Frye* hearing. Nobody asserted that any theory in the instant case was "new" or "novel." Nobody disputed that carpal tunnel syndrome exists. There also was no dispute that plaintiff had a carpal tunnel injury. No party disputed that carpal tunnel syndrome or carpal tunnel injuries *can* be caused by the repetitive trauma that occurs in some occupational activities. Defendant's ergonomic expert, David Ridyard, acknowledged the contribution of workplace factors. Defendant's counsel conceded that a number of authoritative studies have shown that repetitive movements were a risk factor for the development of carpal tunnel syndrome. Instead, the issue here was whether *this* plaintiff's carpal tunnel syndrome was aggravated (or even caused) by his job. Defendant asserted that the studies only applied where the repetitive nature of the job activities was at a high level and that plaintiff's job did not involve a sufficiently high level of activity. But, as we shall explain later, the actual basis of such an objection is lack of factual

6

1-04-2851

foundation.

As plaintiff noted below, this case does not involve some question of scientific causation, *e.g.*, "does exposure to radiation from cell phones cause a brain tumor?" Neither physician offered a new or novel scientific principle, technique or test to support his conclusion that plaintiff's injuries were related to his job. This case involves a treating physician giving an opinion as to the cause of his patient's condition. Medical testimony is not novel.

In *Turner v. Williams*, 326 Ill. App. 3d 541, 762 N.E.2d 70 (2001), the court held that the trial court abused its discretion in excluding the testimony of a reconstruction expert retained by the defendants. The trial court had decided that the computer-generated data used by the expert in formulating his opinions did not satisfy the *Frye* standard. *Turner v. Williams*, 326 Ill. App. 3d at 554, 762 N.E.2d at 81. One of the bases of the trial court's ruling was that the testimony was without foundation because the expert did not input information extracted from the depositions, and therefore, did not take into account certain facts which the plaintiffs believed to be relevant. *Turner v. Williams*, 326 Ill. App. 3d at 554-55, 762 N.E.2d at 82. In reversing, the appellate court noted that the *Frye* test is used to test novel scientific evidence with no prior history or reliability and that accident reconstruction testimony is not novel. *Turner v. Williams*, 326 Ill. App. 3d at 554, 762 N.E.2d at 82.

In any event, even where a theory is considered "new" or "novel," general acceptance applies to the underlying methodology used to generate the conclusion; it does not concern the actual conclusion reached. *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 77, 767 N.E.2d 314 (2002). Another physician might disagree with the conclusions of Dr. Madhav

7

and Dr. Sherin, but nonetheless would use their same methods. The testimony of the physicians showed that they used standard, accepted methods to arrive at their conclusions. They had their experience and training, general knowledge of literature on the subject, differential diagnoses eliminated, and their examinations, history and treatment.

Dr. Madhav testified that he was aware of peer-reviewed studies that actually establish a causal connection, as opposed to an association, between work and carpal tunnel syndrome. He was not aware of any studies that found that repetitive movements at a low level are associated with carpal tunnel syndrome. Nevertheless, he testified that the studies did not quantify the number of times the repetitive movement had to be performed to cause carpal tunnel syndrome. He also explained that the so-called "low level" of repetitive movements to which defendant's counsel referred was "very arbitrary in terms of that [*sic*] it could be low for you, but not for me." He also acknowledged that it was his personal feeling from experience that the people who got carpal tunnel syndrome had a propensity to get tissue injuries more than others and that, therefore, there had to be other factors involved.

We further note that other jurisdictions have made a distinction between (1) causation testimony based on "studies and tests" and (2) "pure opinion testimony" that is based on an "expert's personal experience and training," or "testimony personally developed through clinical experience." See, *e.g.*, *Hadden v. State*, 690 So. 2d 573, 576 (Fla. 1997); *Flanagan v. State*, 625 So. 2d 827, 828 (Fla. 1993). "Pure opinion testimony" is not subject to *Frye*. Rather, *Frye* is directed at expert testimony which "relies on some *scientific principle* or test [because such testimony] implies an infallibility not found in pure opinion testimony." (Emphasis added.)

*Flanagan*, 625 So. 2d at 828; *cf Donaldson*, 199 Ill. 2d at 87, 767 N.E.2d at 329 (noting that the extrapolation method did not involve a new scientific technique that may instill a sense of false confidence because "extrapolation by nature admits its fallibility–the lack of specific support to establish the existence of a known cause and effect relationship").

 Although the distinction between "pure opinion testimony" and causation testimony based on studies and tests has not been expressly noted in Illinois, we believe it is a valid distinction.  We believe that plaintiff's medical experts here were offering "pure opinion testimony" that was "based solely on the expert's training and experience" and was not subject to *Frye*.

Pure opinion testimony that does not involve a new or novel scientific technique or procedures nor depend upon new or novel scientific principles to support its conclusion need not be subjected to a *Frye* test.  Here, the testimony was *not* based on new or novel science but, instead, the physician's personal knowledge and practical experience.

Generally, in Illinois, pure opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field that has " 'at least a modicum of reliability' " and the testimony would assist the jury in understanding the evidence. *Turner v. Williams*,  326 Ill. App. 3d at 552, 762 N.E.2d at 80, quoting *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 799, 721 N.E.2d 614 (1999).  An expert's opinion, however, is only as valid as the reasons for the opinion. *Turner v. Williams*,  326 Ill. App. 3d at 552-53, 762 N.E.2d at 80-81.

Despite the references below to *Frye* and *Daubert*, it appears that the real basis of the

trial court's granting of defendant's motion to bar the opinion testimony of plaintiff's treating physicians was that it lacked a sufficient factual basis. Defendant noted that carpal tunnel syndrome may have other causes or even no identifiable cause at all. The trial court agreed with defendant's argument that plaintiff's experts, because they did not know the particulars of plaintiff's job, were unable to articulate any factual basis for their bare conclusions that plaintiff's carpal tunnel syndrome was work related.[1] We conclude that the trial court erred.

The Illinois Supreme Court has explained that the basis for a witness's opinion generally goes only to the weight of the evidence, not its sufficiency. *Snelson v. Kamm*, 204 Ill. 2d 1, 26-27, 787 N.E.2d 796, 810 (2003). In fact, the *Snelson* court emphasized that "the weight to be assigned to an expert opinion is for the jury to determine in light of the expert's credentials and the factual basis of his opinion." *Snelson*, 204 Ill. 2d at 27, 787 N.E.2d at 810. Also, in *Turner v. Williams*, the court decided that the information used or not used by the expert was not a sufficient basis to bar, as lacking foundation, the expert's testimony. *Turner v. Williams*, 326 Ill. App. 3d at 555, 762 N.E.2d at 82. As the court explained, the issue could have been adequately

---

[1]Defendant also argues in this appeal that plaintiff's experts were unqualified, but this argument is meritless.

1-04-2851

brought to light before the jury on cross-examination. *Turner v. Williams*, 326 Ill. App. 3d at 555, 762 N.E.2d at 82.

As the record shows, the opinions of the treating physicians had a sufficient factual foundation. The record makes clear that those physicians had reasonable understandings of the nature of the work that plaintiff performed, as well as the mechanics of carpal tunnel syndrome and other motion related injuries from which plaintiff suffered. They believed that those activities were aggravating his condition and that cessation of them was medically necessary to prevent further injury. The fact that there were various aspects of plaintiff's work that the physicians were unaware of, as noted by defendant, would affect the weight of the evidence and the credibility of the physicians, rather than the admissibility of that testimony. The issue can be adequately brought to light before the jury on cross-examination.

We reverse the trial court's orders *in limine* barring the testimony of Dr. Madhav and Dr. Sherin. In view of this decision, we need not address the issue of whether the trial court erred in granting defendant's objections based upon violations of those orders *in limine*.

Plaintiff also contends that the trial court's order *in limine* barring testimony regarding the original cause of plaintiff's carpal tunnel syndrome was error. He asserts that, as a result, he was unfairly denied the right to fully present and develop his case and his damages. Plaintiff contended below that it was a very important element of the case to show that plaintiff originally got his carpal tunnel syndrome while at that job to show what defendant knew. Plaintiff's counsel asserted below that it would show the jury why he was at risk when he came back to work, *i.e.*, "[t]hat by just putting him back to work at the same old job, making no changes in

11

what he did, and lo and behold he came back to absolutely no one's surprise, because they just had him doing the same thing and in even greater repetitions."

Nonetheless, as defendant correctly notes, the original cause of plaintiff's carpal tunnel injury was never established because his claim with respect to that purported injury was time-barred. Any "causation" testimony would have been pure speculation on an issue wholly irrelevant to plaintiff's current claim. As defendant noted below, it would be prejudiced by the admission of testimony that plaintiff's original surgeries were caused by his work, which would lead a jury to erroneously conclude that because defendant caused the carpal tunnel syndrome, it must have made it worse. The jurors heard without contradiction that plaintiff had preexisting carpal tunnel syndrome. That was all they needed to know with respect to the instant case or plaintiff's claim for damages resulting from the purported aggravation of this preexisting condition.

We next address plaintiff's argument that the trial court erred in granting defendant's objections to the testimony of Terry Cordray as to his experience and knowledge in handling railroad claims for repetitive motion injuries. We disagree. Our review of the record shows that defendant objected to Cordray's testimony based on lack of foundation for what was clearly medical testimony. The trial court correctly barred Cordray from giving medical opinion testimony, *i.e.*, it barred Cordray from expressing an opinion on the cause of plaintiff's CTS or testifying that plaintiff's return to his work with defendant aggravated his CTS. Plaintiff faults defendant for failing to cite to any lack of disclosure in either answers to rule 213 (177 Ill. 2d R. 213) interrogatories, or in Cordray's deposition testimony. But we conclude that plaintiff has

12

failed to show that the trial court abused its discretion in barring Cordray from giving medical testimony because of its lack of foundation.

Plaintiff has also contended that the testimony of record, even with the limitations on testimony, was sufficient to let this case go to the jury. In view of our decision to reverse the orders *in limine*, this issue is moot.

In accordance with the foregoing, we reverse the decision of the circuit court of Cook County that granted defendant's motion for directed verdict. We remand this cause for further proceedings consistent with this order.

Reversed and remanded.

O'BRIEN and NEVILLE, JJ., concur.