In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3931

EDIN KARAHODZIC, Individually and
as Personal Representative of the Es-
tate of Hasib Karahodzic,

*Plaintiff-Appellee,*

*v.*

JBS CARRIERS, INC. and CHRISTOPHER
THOMPSON, Temporary
Administrator of the Estate of
Orentio Thompson,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-01040-DRH-RJD — **David R. Herndon**, *Judge.*

ARGUED OCTOBER 24, 2017 — DECIDED FEBRUARY 7, 2018

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit
Judges.*

ROVNER, *Circuit Judge.*   Hasib Karahodzic, a commercial
truck driver for E.J.A. Trucking, Inc., was killed when his
vehicle collided with a truck driven by Orentio Thompson, an
employee of JBS Carriers, Inc.[1] A jury trial on the claims
brought by Hasib's estate and by his son Edin, individually,
resulted in a judgment in favor of the plaintiffs. The defendants
appeal and we affirm.

**I.**

In the early morning hours of March 17, 2012, Thompson
was driving his tractor/trailer westbound on Interstate 70 when
he noticed a malfunctioning light blinking on the side of his
trailer. Just past the Brownstown, Illinois exit, he activated his
right turn signal and pulled onto the shoulder of the highway.
Once stopped, he turned on his four-way flashers and then
walked around his truck to inspect the lights. He unplugged
and then reattached the electrical connection between the
tractor and the trailer. That resolved the errantly blinking light
and he returned to the cab. With the four-way flashers still on,
he had just reentered the right lane of the highway and was
traveling between fifteen and eighteen miles an hour when
Hasib crashed into the back of his trailer. Hasib had just come

---

[1] Although Mr. Thompson survived the crash, he died unexpectedly during
the litigation of this case. His estate is represented by his son, Christopher.
When we refer to "Thompson," we mean Orentio. Edin Karahodzic is the
son of Hasib and has sued the defendants as the representative of his
father's estate and in his capacity as an individual. Claims have been
brought on behalf of several members of the Karahodzic family (sons Edin
and Selvedin, daughter Edina, and wife Esma) and we will refer to each
member of the Karahodzic family by his or her first name for the sake of
clarity.

around a large curve in the road when he encountered Thompson's slow-moving truck. The impact from the crash killed Hasib instantly and set his truck on fire.

In a tragic coincidence, Hasib's son, Edin, who also drove for E.J.A. Trucking, was also driving westbound on Interstate 70 that morning. Shortly after the crash, Edin came upon the scene and saw that his father's truck was on fire. He parked in front of Thompson's truck and ran to help his father. He saw his father in the truck cab, and believing him to still be alive, attempted to pull him from the cab and put out the fire. Edin suffered burns to his hands and face from his unsuccessful attempt to rescue his father, and watched as his father's body burned. He called his brother Selvedin to tell him what had happened. Selvedin drove eighty miles to the scene of the accident and also saw his father's burned body. The brothers then drove home to tell their mother, Esma, and sister, Edina, what had happened.

Every member of the Karahodzic family suffered emotional trauma from Hasib's death. Esma's emotional reaction on hearing of her husband's death was so severe that she had to be taken to a hospital. As a result of Major Depressive Disorder brought on by Hasib's death, Esma never returned to work. Edin suffered Post Traumatic Stress Disorder as a result of his father's death and his failed attempt to rescue him. Hasib's daughter, Edina, attempted suicide at her father's grave near the first anniversary of his death. Selvedin, who is also a truck driver, had constant reminders of his father's death when he drove past the location of the accident once or twice a week. Family dynamics changed and relationships suffered as Hasib's family struggled to move forward after his death.

JBS Trucking initiated the litigation, suing Hasib's estate and E.J.A. Trucking to recover for the damage to JBS Trucking's trailer and its contents. E.J.A. Trucking counterclaimed against JBS Trucking for damage to E.J.A. Trucking's trailer and its contents. Edin, as personal representative of his father's estate, also counterclaimed against JBS Trucking and brought a third-party complaint against Thompson seeking damages for Esma, Selvedin, Edina and himself under the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq*. Edin also brought a claim in his individual capacity against JBS Trucking and Thompson under the Illinois rescue doctrine to recover for his injuries resulting from his attempt to rescue his father. In response to Edin's individual claim, the defendants each asserted a counterclaim against Hasib's estate pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq*. The parties settled some of the claims before trial, and certain claims were dismissed with prejudice as a result. The court then granted a joint motion to realign the parties so that court records would reflect that Edin Karahodzic, individually and Edin Karahodzic, as personal representative of the estate were now the plaintiffs and JBS Carriers and Thompson were now the defendants.

A nine-day jury trial resulted in a verdict in favor of the plaintiffs on both claims. On the wrongful death claim, the jury attributed fifty-five percent of the fault to Thompson and JBS Carriers, and forty-five percent to Hasib Karahodzic. The jury accordingly reduced its $5,000,000 damage award by forty-five percent, awarding the estate damages in the amount of $2,750,000. The jury awarded Edin Karahodzic $625,000 on his individual rescue doctrine claim. The defendants appeal.

## II.

On appeal, the defendants first assert that the court committed reversible error in refusing to give an Illinois pattern jury instruction on the duty to mitigate damages, and in giving instructions related to "careful habits" and "exigent circumstances." The defendants also argue that the court should have apportioned the award given to Edin personally on his rescue doctrine claim by the same percentages that the jury used in setting the estate's damages on the wrongful death claim. The defendants further maintain that the court erred when it allowed the jury to award Esma's lost earnings as damages under the Wrongful Death Act. And finally, the defendants contend that they were denied a fair trial due to certain evidentiary rulings made by the trial court.[2]

---

[2] We review the district court's evidentiary rulings for abuse of discretion. *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 548 (7th Cir. 2017). The defendants complain that some of the expert testimony regarding the collision was cumulative, and that one expert was erroneously allowed to testify on "closing speed," a prejudicial matter on which he had not previously disclosed his opinion. "As a general rule, errors in admitting evidence that is merely cumulative of properly admitted evidence are harmless." *Jordan v. Binns*, 712 F.3d 1123, 1138 (7th Cir. 2013). The defendants have failed to demonstrate any unfair prejudice from the district court's decision to allow testimony on the same topic from experts with differing areas of expertise. *Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1397 (7th Cir. 1994) (admission of cumulative evidence does not warrant reversal absent a showing of prejudice). The jury was instructed to ignore the "closing speed" testimony, and juries are presumed to follow limiting and curative instructions. *Sanchez v. City of Chicago*, 700 F.3d 919, 932 (7th Cir. 2012) (courts generally presume that juries follow instructions to disregard objectionable evidence). We find no abuse of discretion in the district court's

(continued...)

## A.

We consider first whether the trial court erred by refusing to give the Illinois pattern instruction on the plaintiffs' duty to mitigate damages. According to the defendants, Illinois Supreme Court Rule 239(a) dictates that the pattern instruction "shall be used" unless the court determines that it does not accurately state the law. The defendants contend that, by refusing to follow Rule 239(a), the trial court erroneously took from the jury the question of whether the Karahodzic family complied with their legal duty to mitigate their damages. The defendants also complain that they were "denied the opportunity to argue in closing" that the family had a duty to mitigate their damages and could not recover damages proximately caused by their failure to mitigate.

There are a number of problems with this argument. First, federal district courts sitting in diversity are bound by state substantive law but not by state court procedural rules. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010). The Illinois rule that mandates the use of Illinois pattern instructions is procedural, not substantive. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768–69 (7th Cir. 2013) (in a diversity action, we look to state law to determine whether the instruction properly stated the substantive law but federal law governs whether the instruction was sufficiently clear); *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 449 (7th Cir. 2000) ("Rules of general applicability

---

[2] (...continued)
evidentiary rulings and will not address this issue further.

and purely managerial character governing the jury, such as the form in which a civil jury is instructed, are quintessentially procedural for purposes of the *Erie* rule."). In other words, "state law determines the content of jury instructions" and federal law governs "the manner in which instructions are requested and given." *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 701 F.2d 1189, 1199 (7th Cir. 1983). *See also Stutzman v. CRST, Inc.*, 997 F.2d 291, 293 (7th Cir. 1993) ("In a diversity case, federal law guides our review of jury instructions."). So state law governs whether the instructions were correct statements of Illinois law on the mitigation of damages, but the particular wording was within the discretion of the district court judge and our review is governed by federal standards. *Ryobi*, 725 F.3d at 768.

Under those federal standards, we review *de novo* whether the jury instructions stated the law correctly, affording the district court substantial discretion as to the precise wording of the instructions so long as the final result, read as a whole, completely and correctly states the law. *Ryobi*, 725 F.3d at 768. *See also Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 796 (7th Cir. 2016) (we review jury instructions *de novo* to determine whether they fairly and accurately summarized the law). The trial court's decision to give a particular instruction is reviewed for an abuse of discretion. *Paldo Sign*, 825 F.3d at 796. We reverse only if the instructions, taken as a whole, misled the jury. *Paldo Sign*, 825 F.3d at 796; *United States v. Curtis*, 781 F.3d 904, 907 (7th Cir. 2015). Thus any argument that the court committed reversible error simply by refusing to follow Illinois Supreme Court Rule 239, a procedural rule, is foreclosed by the *Erie* doctrine.

The second problem with the defendants' argument is that
the trial court did in fact instruct the jury on the issue of the
duty to mitigate and there is nothing erroneous or misleading
about the wording of the instructions given. Although the
defendants failed to mention the mitigation instructions given
by the court in their opening brief, and even failed, until the
reply brief, to give us the supposedly critical language of the
pattern instruction, there is no meaningful difference between
the two. The pattern instruction tells the jury that, in deciding
the amount of money needed to compensate a plaintiff, "you
are to consider that an injured person must exercise ordinary
care to obtain medical treatment. Damages caused by a failure
to exercise such care cannot be recovered." The trial court gave
two instructions regarding mitigation, one for the estate's claim
on wrongful death, and one for Edin's rescue doctrine claim.
Except for accounting for multiple plaintiffs in the wrongful
death claim, the instructions are identical and we quote here
the instruction given for Edin's rescue claim:

> Defendants argue in the claim of Edin Karahodzic
> that the compensation sought by him must be
> reduced by his failure to obtain medical treatment.
> If you find that Edin Karahodzic did not take rea-
> sonable actions to reduce his damages, and Edin
> Karahodzic would have reasonably been able to
> reduce his damages by obtaining medical treatment,
> you should reduce any amount you might award
> Edin Karahodzic by the amount you unanimously
> determine was impacted by Edin Karahodzic not
> taking reasonable actions to reduce his damages by
> the failure to obtain medical treatment. Defendants

> must prove both the reduction should be made and
> its amount.

R. 167-2. Thus the jury was informed that it should reduce the amount it awarded to Edin if he failed to take reasonable actions to reduce his damages and if he could have reasonably reduced his damages by obtaining medical treatment. This is no different from telling the jury that Edin could not recover damages caused by a failure to take ordinary care to obtain medical treatment. The court declined to give the defendants' pattern instruction because the substance was covered by these other instructions. There was no abuse of discretion in choosing one instruction over the other when both accurately stated the law.

The third problem is that the defendants fail to explain what is missing from the instruction given, and complain primarily that the given instruction referred to defendants' "argument" that the plaintiffs failed to mitigate rather than the plaintiffs' legal duty to mitigate. But there is nothing misleading in characterizing the issue as being raised by the defendants. Failure to mitigate is an affirmative defense in Illinois, and the defendants bore the burden of proof. *Rozny v. Marnul*, 250 N.E.2d 656, 666 (Ill. 1969). The duty to mitigate was spelled out by the directive to reduce Edin's damages if he could have avoided the harm by seeking medical care and failed to do so. *See Amalgamated Bank of Chicago v. Kalmus & Assocs.*, 741 N.E.2d 1078, 1086 (Ill. App. Ct. 2000) (the duty to mitigate imposes a duty on the injured party to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted). The defendants' proposed instruc-

tion added nothing and the court acted within its discretion in declining to give a duplicative instruction.

Finally, the defendants were not, in fact, deprived of an opportunity to argue about the plaintiffs' duty to mitigate in their closing argument. The court did not prohibit the defendants from making that argument and the defendants argued the issue in closing. Specifically, the defendants argued that the jury must take mitigation into account in determining damages, that the plaintiffs are under an obligation to seek medical treatment, that treatments are available for Edin's post-traumatic stress disorder, and that Edin and his siblings had not sought treatment that could have made them better. The defendants also argued that Edin's damages for his rescue claim should be limited to $50,000 given his failure to mitigate. In sum, the jury was adequately instructed and the defendants argued the mitigation issue to the jury. There is no reversible error related to the court's refusal to give the pattern instruction.

**B.**

The defendants next argue that the "careful habits" and "exigent circumstances" instructions misled and confused the jury, and did not address any issue raised by the evidence presented at trial. We begin with the "careful habits" instruction. The jury was instructed that if there was evidence tending to show that Hasib was a person of careful habits, the jury could infer that Hasib was "in the exercise of ordinary care for his own safety and the safety of others at and before the time of the occurrence, unless the inference is overcome by other evidence." R. 167-3. In Illinois, the plaintiff in a personal injury

action has the burden of proving that the injured person was exercising a proper degree of care for his or her own safety at the time of the injury. *Hardware State Bank v. Cotner*, 302 N.E.2d 257, 261 (Ill. 1973).

> However, in wrongful death cases where there are no competent eyewitnesses the plaintiff cannot prove his decedent's exercise of due care by direct testimony. In such instances, considering the practical problem of demonstrating freedom from contributory negligence, evidence of the prior careful habits, if pertinent, of the deceased may be admitted as tending to prove the deceased's exercise of due care.

*Hardware State Bank*, 302 N.E.2d at 261. *See also Jacobs v. Yellow Cab Affiliation, Inc.*, 73 N.E.3d 1220, 1259 (Ill. App. Ct. 2017) (careful habits evidence is admissible to show due care when the plaintiff is unavailable to testify and no eyewitnesses other than the defendant are available).

Edin testified, without objection from the defendants, that he had driven in the truck with his father for a period of eight or nine months when they were "team driving" a number of years before the fatal accident. Edin explained that he was able to observe his father's driving habits when they drove together. He said that when his father encountered a vehicle pulled over on the shoulder of the road, he would move into the left lane if it was safe to do so, or would slow down and stay in the right lane if it was not safe to move left. Over the defendants' objection, the jury was later given the Illinois

pattern instruction on "careful habits" that we described above.

It is within the trial court's sound discretion to admit or deny evidence of careful habits, and, in any case, this evidence came in without objection. *Jacobs*, 73 N.E.3d at 1259. The defendants assert, however, that the evidence presented on Hasib's driving habits was insufficient to support giving the instruction, that Edin's observations of his father's habits were too remote in time to be relevant, and also that the instruction was inappropriate because Hasib did not act in accordance with the habit on this occasion. That is, Hasib did not move into the left lane and did not slow down before striking Thompson's truck. The instruction given by the trial court completely and accurately states the Illinois law regarding "careful habits" and so the only issue is whether the district court abused its discretion in deciding to give this instruction in this situation. *Paldo Sign*, 825 F.3d at 796. The defendants' argument largely amounts to a request to reweigh the trial court's determination that the plaintiffs presented enough evidence to justify giving the instruction. We see no abuse of discretion in allowing the jury to consider Edin's testimony as evidence of his father's careful habits. Hasib and Edin drove together for a significant amount of time and Edin was able to observe his father's regular practice many times in similar situations. The defendants' argument that Hasib did not act in accordance with his usual practice at the time of the accident was an issue for the jury to decide. The very reason for the "careful habits" rule is that the decedent is not available to tell the jury why he did not move to the left lane or slow down. One inference that the jury could draw is that Hasib could not

safely move into the left lane at the time of the accident. That was a legitimate argument for the plaintiffs to make to the jury. Obviously, the jury may not have completely accepted the argument that Hasib was exercising due care at the time of the accident because the jury apportioned forty-five percent of the fault to Hasib, but there was no abuse of discretion in allowing the jury to consider this argument.

We turn to the "exigent circumstances" instruction. One of the defendants' theories at trial was that Hasib had violated Federal Motor Carrier Safety Administration Regulation 395.3(a) by driving too many hours without sufficient breaks. The regulation requires that drivers take ten consecutive hours off duty before driving no more than eleven hours in the next fourteen-hour period. The defendants proposed a jury instruction that allowed the jury to take that regulation into account in deciding whether Hasib was negligent before and at the time of the accident. The plaintiffs countered that the instruction was incomplete without also alerting the jury to certain exceptions to the regulation. Specifically, the regulation allows drivers to exceed the hours of driving during certain adverse conditions caused by traffic and weather. A driver may do so once a week and may subjectively decide that conditions warrant the additional hours. Because the defendants' expert had testified to the existence of the exception (which the parties refer to as the "exigent circumstances" rule), the court decided to instruct the jury on the adverse driving condition exception so that the jury would have the full context of the regulation. The court explained to defendants' counsel:

> I understand that you're wearing blinders here, but there is a dispute in the evidence. So, you know, the

jury has a right to see what the regulations are and they have a right to see both sides of the case here, not just the one side you want them to see. I want them to have that context. So, you know, it's a neutral position. They get to see what the law is, what the regulation is. It doesn't—there's nothing that says, *and he was confronted with this adverse condition*. It's just what the law is. Let them make that decision. Whether they believe he was confronted with that or not, that's up to them to decide. Let them have the context, let them have the law, let them decide what the facts are.

R. 213, Tr. at 1165 (emphasis in original). As with the careful habits instruction, the defendants do not contend that the jury was presented with an incorrect statement of the law; rather, they simply complain that the evidence did not support giving this particular instruction. As is apparent from the passage we just quoted, however, this was a quintessential exercise of the court's discretion and nothing about the court's reasons for giving the instruction even hints at an abuse of that discretion.

## C.

We turn to the defendants' claim that the court should have entered judgment in their favor and against Hasib's estate on the contribution counterclaims they filed in response to Edin's rescue doctrine claim. According to the defendants, the jury found that Hasib was 45% at fault for the accident,[3] and

---

[3] The defendants' claim is based in part on a misapprehension of the jury's

(continued...)

Hasib's estate should therefore be liable for 45% of the $625,000 in damages that the jury awarded to Edin on his rescue doctrine claim. They rely entirely on a plain language reading of the Illinois Joint Tortfeasor Contribution Act ("Contribution Act") in making this argument[4] and so we begin with the relevant language:

> [W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though

---

[3] (...continued)

finding. The jury did not find Hasib 45% liable for the accident, but rather 45% liable for his own death. Although these appear at first glance to be identical findings, as we will discuss below, there is an important distinction in Illinois law that matters to the outcome here.

[4] The plaintiffs responded to this plain-language argument by asserting that (1) JBS Carriers dismissed its counterclaim for contribution when other claims settled; (2) defendants are time-barred from making a claim against the estate under Missouri law; and (3) defendants are not entitled to contribution until they have actually paid the estate, which they had not done at the time of the appeal. Although the stipulation of dismissal resulting from the partial settlement broadly purports to dismiss the claims of JBS Carriers against the estate, it appears designed to resolve claims for property damage while reserving the wrongful death and rescue doctrine claims, which would include JBS Carriers' claim for contribution from the estate. Given that even the plaintiffs treated the contribution claim as a live claim until they filed their brief in this court, we will not rely on that ground. There is no merit to the plaintiffs' other assertions. We therefore resolve the contribution issue on the defendants' plain language ground (albeit not in defendants' favor).

judgment has not been entered against any or all of
them.

740 ILCS 100/2. The defendants maintain that if Hasib was
found to be a cause of the accident, then the defendants would
have a right of contribution against the estate for Hasib's
percentage of the fault. The district court rejected this theory as
inconsistent with Illinois law and the rescue doctrine, and also
refused to give a jury instruction suggesting that the same
percentage of relative fault between the defendants and Hasib
on the wrongful death claim should apply to allocate fault on
Edin's rescue doctrine claim. The rejected instruction stated:

> Further, on the claim of Edin Karahodzic as Personal
> Representative for the Estate of Hasib Karahodzic,
> the jury will first be asked to determine the relative
> fault between Defendants and the Estate. This
> determination will then be used to determine alloca-
> tion of fault on the individual injury claim of Edin
> Karahodzic.

R. 142, at 4.

The rescue doctrine applies when a plaintiff brings a
negligence action against a defendant whose actions have
placed a third party or the defendant himself or herself in a
position of peril. *Reed v. Ault*, 969 N.E.2d 515, 527 (Ill. App. Ct.
2012). A rescuer who voluntarily attempts to save the life or
secure the safety of another person in peril is protected by the
rescue doctrine from a claim of contributory negligence unless
the rescuer has acted rashly or recklessly. *Reed*, 969 N.E.2d at
527; *Strickland v. Kotecki*, 913 N.E.2d 80, 83 (Ill. App. Ct. 2009).
A plaintiff who is injured in a rescue attempt is also allowed to

negate a presumption that his intentional act of rescue is the superceding cause of his injuries, thereby allowing him to prove the defendant's negligence is the proximate cause of his injuries. *Strickland*, 913 N.E.2d at 83. Edin sued JBS Trucking and Thompson under the rescue doctrine and those defendants then filed third party complaints against the estate for contribution.

We agree that the plain language of the Contribution Act resolves this question, but we conclude that it resolves it against the defendants. By its terms, the Contribution Act applies "where 2 or more persons are *subject to liability in tort* arising out of the *same injury* to person or property, or the same wrongful death." 740 ILCS 100/2. In other words, as is indicated by the title of the statute, there is a right of contribution against a tortfeasor, another person subject to liability in tort. The jury determined only that Hasib's estate, as plaintiff in the wrongful death action, was contributorily negligent in causing Hasib's wrongful death. The defendants' theory presumes that Hasib's contributory negligence to his own wrongful death is identical to Hasib's liability as a possible defendant in a rescue doctrine case. But these are not the same thing. Hasib's "liability in tort" towards Edin has never been established, only his lack of due care for his own safety. *Carter v. Chicago & Illinois Midland Ry. Co.*, 487 N.E.2d 1267, 1270 (Ill. App. Ct. 1986). Under the defendants' theory, there was no need to establish Hasib's liability in tort towards Edin because Hasib's contributory negligence towards himself was identical to his negligence towards his rescuer. But under Illinois law, a finding of comparative negligence does not automatically

convert the percentage of comparative negligence into the same percentage of contribution. *Carter*, 487 N.E.2d at 1270.

It is easiest to see the distinction when considering a Contribution Act case outside the context of the rescue doctrine. *See Laue v. Leifheit*, 458 N.E.2d 622 (Ill. App. Ct. 1983). In that case, Leifheit, the driver of a car, was originally the plaintiff (along with four members of her family who were passengers) in an action against Laue, a truck driver from whom they recovered damages for injuries sustained in a car/truck collision. The original jury found that Leifheit was thirty-three percent comparatively negligent in causing her own injuries in that action. Laue subsequently brought a claim for contribution against Leifheit, seeking payment from her for thirty-three percent of the damages that Laue paid to Leifheit's four passengers in the original action. Laue was granted judgment on a motion on the pleadings in this second action, and Leifheit appealed. 458 N.E.2d at 624.

In the original case, the jury that found that Leifheit was thirty-three percent negligent in causing her own injuries had been instructed that the issue of contributory negligence did not apply to the passengers. Nevertheless, in the second case, the trial court determined that "it axiomatically follows if it [her contributory negligence] contributed to her injuries, it would also contribute to the injuries of the other people in her car." 458 N.E.2d at 626. The appellate court disagreed, finding that no jury had yet determined Leifheit's liability *to her*

*passengers*.[5] The court noted that Leifheit was the plaintiff, not the defendant, in the original action, and that:

> Even in cases where a plaintiff is partially at fault, his culpability is not equivalent to that of a defendant. The plaintiff's negligence relates only to a lack of due care for his own safety while the defendant's negligence relates to a lack of due care for the safety of others; the latter is tortious, but the former is not.

*Laue*, 458 N.E.2d at 627 (quoting *Coney v. J.L.G. Indust., Inc.*, 454 N.E.2d 197, 205 (Ill. 1983). The court also agreed with Leifheit that:

> she was improperly precluded from litigating the issues of her liability to her passengers and her culpability relative to Laue's. The jury's finding that 33% of the combined negligence which caused the

---

[5] The appellate court determined that Laue was not barred from bringing his claim for contribution in a separate action, even though he could have brought it during the pendency of the original action. The Illinois Supreme Court later reversed that finding after concluding that the statute requires that a contribution claim be brought in a pending action. *Laue v. Leifheit*, 473 N.E.2d 939, 941–42 (Ill. 1984) (it is clear from section 5 of the statute that, if there is a pending action, then the party seeking contribution must assert a claim by counterclaim or by third-party claim in that action). The defendants here did bring a third-party complaint against Hasib in the original action, so that is not an issue here. But rather than fully litigate that claim, the defendants sought to simply apply the results of the wrongful death claim to the rescue doctrine claim. That theory misapprehended Illinois law as we discuss *infra*. The Illinois Supreme Court left the remainder of the appellate court opinion intact, and at least one court has noted the continuing validity of the reasoning in the *Laue* appellate court opinion. *See Carter*, 487 N.E.2d at 1270.

> damage to Leifheit was attributable to her does not translate to a judgment that she is therefore subject to liability in tort in that percentage as well. Consequently, for purposes of a contribution action, her liability "in tort" has never been established; only her lack of due care for her own safety.

*Laue*, 458 N.E.2d at 628. In other words, in the original action, the jury had not found Leifheit to be a tortfeasor, a person subject to liability in tort.

The defendants bore the burden of pleading and proving their right to contribution from the estate on Edin's rescue doctrine claim. To make out their third party claim, the defendants needed to prove that Hasib was negligent towards Edin. To successfully prove that claim, they should have demonstrated Hasib's duty to Edin as rescuer, proved that Hasib breached that duty, and shown that the breach proximately caused Edin's injury and resulted in his damages. *Laue*, 458 N.E.2d at 628. *See also Carter*, 487 N.E.2d at 1270.[6] Not only did the defendants make no attempt to prove Hasib's negligence towards Edin, they did not correctly allege negligence towards Edin in their third-party complaint. R. 33. *See Carter*, 487 N.E.2d at 1269 (in order to make a claim for contribution

---

[6] In *Carter*, a railway sought in a counterclaim the same percentage of contribution for damages that it paid in the death of a child passenger that a jury had found to be the contributory negligence of her mother, the driver who was killed in the same accident. The court of appeals, citing the appellate opinion in *Laue*, remarked that this was improper because the mother's liability in tort had not been established as to her daughter but only as to her lack of due care for her own safety.

against decedent's estate, claimant must show that the estate is "liable in tort" for the wrongful death of a third party). Instead of alleging that Hasib owed a duty to Edin or to a rescuer generally, they simply alleged that Hasib owed a duty to *JBS Trucking and Thompson* and that he breached that duty. If the jury had been asked to determine whether Hasib breached a duty to Edin (or a rescuer generally) and whether that breach caused Edin's damages, we would have a different case. Indeed, if the jury had been asked to determine Hasib's liability for *the collision* instead of his contributory negligence in causing his own *injury* (i.e. his death), the defendants might have a point.[7] But the jury was simply asked to determine whether Hasib was partly liable for his own injuries, not the collision generally. The defendants' theory that Hasib's liability for his own injuries was automatically transferrable to his liability for Edin's injuries is not supported by Illinois law. The

---

[7] Whether the crash was the proximate cause of Edin's injuries would also have been an open question for the jury to resolve. Edin was injured by the fire and his father was killed instantly by the crash. Because of the way the defendants framed their contribution counterclaim, the parties did not litigate the cause of the fire. And so, for example, the fire could have resulted from some unknown defect in the truck or its contents that would not be attributable to any negligence by Hasib. In the same way, in a car crash like *Laue*, the mother's injuries might be caused by her failure to wear a seatbelt, making her contributorily negligent for her own injuries even if she bore no responsibility for the crash itself. If she had placed seatbelts on her children, and had not contributed to the crash itself, she would not be liable in tort for their injuries. Likewise, adult passengers might bear a different amount of responsibility for their injuries depending on whether they wore a seatbelt. So deciding fault for the crash does not necessarily resolve contributory negligence for the injuries.

jury did not find that Hasib was a tortfeasor or that he breached a duty to Edin that caused Edin's damages. The court did not err in refusing to instruct the jury as the defendants requested.

## D.

Finally, the defendants claim that the trial court erred as a matter of law in allowing the jury to award damages for Esma's lost earnings. The Illinois Wrongful Death Act provides that, "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, including damages for grief, sorrow, and mental suffering, to the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2. Prior to 2007, there was no provision allowing damages for grief, sorrow and mental suffering, and plaintiffs were limited to recovering "pecuniary injuries" such as benefits, goods, services and loss of society. *See e.g. Turner v. Williams*, 762 N.E.2d 70, 77 (Ill. App. Ct. 2001). In 2007, the statute was amended to allow damages for grief, sorrow and mental suffering. According to the defendants, grief and mental suffering do not include lost wages, and yet the plaintiffs were allowed to present expert testimony that Esma's lost wages due to the Major Depressive Disorder brought on by Hasib's death amounted to $199,744.

There was no line on the verdict form asking the jury to award damages for Esma's lost wages. The jury was asked generally to state an amount for "[g]rief, sorrow and mental suffering." R. 170. The plaintiffs argued to the jury that Esma was precluded from working because of the mental health consequences she suffered as a result of Hasib's death. The

plaintiffs characterize her lost wages as a way of quantifying, in part, her grief, sorrow and mental suffering. The defendants argue that nothing in Illinois law allows the jury to award Esma's lost wages. But nothing in Illinois law prohibits plaintiffs from using the lost wages due to mental suffering as a way to quantify the damages for grief, sorrow and mental suffering. Grief, sorrow and mental suffering are highly subjective experiences which are difficult to quantify. But the inability to work due to that grief is the kind of concrete "pecuniary injury" that the Illinois statute provides for. Because the plaintiffs presented evidence that Esma's inability to work was due to the Major Depressive Disorder that was brought on by Hasib's death, there was no error in allowing the jury to quantify her grief-based damages in part with her lost wages.

AFFIRMED.