In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-2348

HERBERT HARDIMON,

*Plaintiff-Appellant*,

*v.*

AMERICAN RIVER TRANSPORTATION COMPANY, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 21-cv-00298 — **Reona J. Daly**, *Magistrate Judge*.

ARGUED JANUARY 17, 2024 — DECIDED MARCH 19, 2024

Before FLAUM, EASTERBROOK, and PRYOR, *Circuit Judges*.

FLAUM, *Circuit Judge*. After slipping on ice on the deck of a barge, Herbert Hardimon fell overboard and spent twelve minutes in the freezing February waters of the Mississippi River. His complaint, however, fails to connect his plunge with the breach of any duty owed to him by American River Transportation Company, LLC (ARTCO). As a result, we affirm the district court's dismissal of his claim against ARTCO with prejudice.

## I. Background

Hardimon was employed by SCF Lewis and Clark Fleeting, LLC (SCF) as a crewmember on a flat deck crane barge. Most of his work involved cleaning barges on the Mississippi River. To do so, the crane barge would moor next to a barge in need of cleaning, and Hardimon would help attach the crane's rigging to a hatch cover on the other barge. The crane would first raise the hatch cover and then lower a Bobcat skid steer loader into the barge's cargo box. Once Hardimon climbed through the open hatch, he would use the Bobcat to clean the bottom of the barge.

On February 12, 2020, barges controlled and operated by ARTCO broke away from their moorings and struck an SCF barge, damaging a hatch cover. The next day, SCF assigned Hardimon to work aboard the damaged barge. The weather was inclement—a wintery mix had been falling for hours and the temperatures plummeted into the teens.

While Hardimon's co-worker attached the crane's rigging to the barge's hatch cover,[1] Hardimon climbed a ladder to the top of another hatch cover to signal the crane operator. When Hardimon climbed back down the ladder and stepped on to the deck of the barge, he slipped on ice and fell into the Mississippi River. Twelve minutes passed before Hardimon was rescued, and he suffered injuries as a result.

Hardimon filed suit against SCF and ARTCO. In his operative third amended complaint, Hardimon brought a claim of

---

[1] Hardimon's complaint does not clearly allege whether this hatch cover was the same one damaged in the breakaway. We will assume it was as it does not impact our reasoning.

general maritime negligence against ARTCO. After briefing, a magistrate judge dismissed the claim with prejudice under Federal Rule of Civil Procedure 12(b)(6), concluding that Hardimon failed to allege that his injuries were proximately caused by ARTCO. Hardimon timely appealed.

## II.    Discussion

"We review the court's dismissal order de novo, accepting the complaint's well-pleaded allegations as true and drawing all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

Admiralty law governs Hardimon's claim against ARTCO. The "elements of a negligence cause of action in admiralty … are essentially the same as land[-]based negligence under the common law." *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001) (citation and internal quotation marks omitted); *see also* 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 5:4 (6th ed. 2018 & 2023 update) (same). "[T]he plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (second alteration in original) (citation and internal quotation marks omitted).

"[A] tortfeasor is accountable only to those to whom a duty is owed," *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987), and a "[d]uty may be owed only

with respect to the interest that is foreseeably jeopardized by the negligent conduct," *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 211 (citation and internal quotation marks omitted); *see also Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 658 (7th Cir. 2012) ("A duty may be found where harm is reasonably foreseeable."). "[T]he determination of any question of duty—that is, whether the law imposed upon the defendant the obligation to protect the plaintiff against the consequences which occurred—is a question of law, and is not for the jury." *Fulk v. Ill. Cent. R.R.*, 22 F.3d 120, 125 (7th Cir. 1994) (citation omitted); *Fuentes v. Classica Cruise Operator Ltd*, 32 F.4th 1311, 1317 (11th Cir. 2022) (applying same standard in maritime context).

"Duty … is measured by the scope of the risk that negligent conduct foreseeably entails." *In re Signal Int'l, LLC*, 579 F.3d 478, 491 (5th Cir. 2009) (omission in original) (citation and internal quotation marks omitted). So, "defin[ing] the [scope of] the duty," if any, owed by ARTCO to Hardimon requires the court to determine "the foreseeability of the injury to [Hardimon] resulting from [ARTCO's] negligent" mooring of its barges. *Consol. Aluminum Corp.*, 833 F.2d at 67; *see also Fuentes*, 32 F.4th at 1317 ("Generally speaking, a duty of care exists under maritime law when injury is foreseeable …." (citation and internal quotation marks omitted)). In turn, an injury is foreseeable if "harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention." *Consol. Aluminum Corp.*, 833 F.2d at 68; *Kawasaki Kisen Kaisha, Ltd.*, 696 F.3d at 659 (applying federal maritime common law and holding that it was not

foreseeable that heavy "molds would break through their crates and cause a [train] derailment").

Put another way, we examine whether the harm was one of "the natural and probable risks that a reasonable person would likely take into account in guiding her practical conduct." *In re Signal Int'l, LLC*, 579 F.3d at 491–92 (citation and internal quotation marks omitted); *Ortega Garcia v. United States*, 986 F.3d 513, 526 (5th Cir. 2021) ("This definition of foreseeability is in terms of *general* forms of harms and *general* classes of victims."); *Serbin v. Bora Corp.*, 96 F.3d 66, 72 (3d Cir. 1996) (explaining that "[t]he type of foreseeability that determines a duty of care … is not dependent on the foreseeability of a specific event" (second alteration in original) (citation omitted)).

For Hardimon's injury to have been foreseeable, (1) crewmembers working on a damaged barge must be a general class of victims ARTCO should reasonably anticipate injuring as a result of negligently mooring its barges; and (2) slipping on ice (or another substance) on the deck of the barge must be a general sort of harm ARTCO should reasonably anticipate resulting from its negligence. *See Ortega Garcia*, 986 F.3d at 526.

While Hardimon may have been within the general class of victims foreseeable to ARTCO, the harm was not. The Fifth Circuit's analysis in *Consolidated Aluminum* is instructive. There the court concluded it was not foreseeable to a dredging company "that its failure to follow safe dredging practices would likely result in physical damage to the equipment and work-in-progress at [an] aluminum reduction plant several miles away." 833 F.2d at 68. It explained, had the dredging company's negligence caused "[i]njury to property and

persons from the escaping gas, or from a fire … [those consequences] would be foreseeable." *Id.* But the harm that resulted was not. *Id.*

Similarly, Hardimon's injury was not a foreseeable result of the barge collision. Hardimon did not board the barge until the morning after the accident. He was not injured during the barge collision or even on the damaged section of the barge; he was injured slipping on ice. Had Hardimon fallen into the Mississippi River due to the force of the barge collision, that type of harm could be reasonably foreseeable to ARTCO. Moreover, Hardimon does not allege that he was working on the icy barge because it had been damaged in the collision or that, absent the collision, he would have either been on a barge without ice or had the day off due to the weather.

At base, the general sort of harm in this case—slipping on ice on the deck of a barge—is not within the class of harms ARTCO should reasonably be expected to foresee resulting from its negligent barge mooring. *See Ortega Garcia*, 986 F.3d at 526–27 (rejecting negligence claim brought on behalf of deceased swimmer because "a private vessel travelling at night in a high-traffic waterway would not reasonably anticipate encountering swimmers in the water"); *Crear v. Omega Protein, Inc.*, 86 F. App'x 688, 692 (5th Cir. 2004) (holding that a reasonable employer would not foresee "that their negligence in failing to properly affix a stern pole [on a fishing boat] would cause an employee" injured by the stern pole to develop psychosis and murder his grandmother). Consequently, ARTCO owed Hardimon no duty of care.[2]

---

[2] While the district court resolved this case on the proximate cause element, "we may affirm on any basis supported by the record, so long as

Hardimon belatedly developed a second argument, claiming he was a rescuer coming to the aid of the damaged barge and, as a result, ARTCO owed him a duty of care. It has long been said, "Danger invites rescue." *Wagner v. Int'l Ry. Co.*, 133 N.E. 437, 437 (N.Y. 1921) (Cardozo, J.). As a result, the rescuer doctrine, which has been extended to maritime cases, *Christensen v. Ga.-Pac. Corp.*, 279 F.3d 807, 816 (9th Cir. 2002), applies to people "who voluntarily expose[] [them]sel[ves] to danger in order to rescue others from it," *Barlow v. Liberty Mar. Corp.*, 746 F.3d 518, 524–26 (2d Cir. 2014).

Courts have explained, however, that the doctrine is limited to injuries resulting from the rescuer's attempt "to save" or protect "an imperiled party." *Fulton v. St. Louis-S.F. Ry. Co.*, 675 F.2d 1130, 1133–34 (10th Cir. 1982); Restatement (Third) of Torts: Phys. & Emot. Harm § 32 (2010) ("[T]he actor's liability includes any harm to a person resulting from that person's efforts to aid or to protect the imperiled person or property, so long as the harm arises from a risk that inheres in the effort to provide aid."); *Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009, 1020 (7th Cir. 2018) (explaining that "[t]he rescue doctrine applies ….[to a] rescuer who voluntarily attempts to save the life or secure the safety of another person in peril" and permits the rescuer to "bring[] a negligence action against [the] defendant whose actions … placed [the] third party … in a position of peril").

Even if we assume the doctrine extends "to the rescue of property" as other courts have, *Christensen*, 279 F.3d at 816,

---

the opposing party had a fair opportunity to be heard on the issue in the district court," as Hardimon did here. *Bradley Hotel Corp. v. Aspen Specialty Ins.*, 19 F.4th 1002, 1006 (7th Cir. 2021).

Hardimon's complaint fails to allege that he was injured while attempting to rescue the barge. Despite three opportunities to amend, his complaint does not allege that he was responding to an exigent or dangerous situation. Uniformly, the cases applying the maritime rescue doctrine do so where a person was injured while reacting to what they believed was an emergency scenario where life or property depended on their quick response. *See, e.g.*, *Furka v. Great Lakes Dredge & Dock Co.*, 755 F.2d 1085, 1087–88 (4th Cir. 1985) (holding there was a question of fact regarding the application of the rescue doctrine where plaintiff came to the aid of someone "freezing to death" in an "open boat"); *Wharf v. Burlington N. R.R.*, 60 F.3d 631, 634 (9th Cir. 1995) (applying rescue doctrine where rescuer was injured while attempting to free his coworker who was "trapped in [a] frozen ballast in a railroad car"); *Christensen*, 279 F.3d at 810–11, 816 (holding there was a dispute of material fact about whether a long-shoreman who injured himself attempting to secure a ship that sprung free of its dock during a storm could assert the rescue doctrine); *Wagner*, 133 N.E. at 437 (concluding that a question of fact remained where a plaintiff was injured attempting to rescue his cousin who had been thrown out of a moving train).

While, in his complaint, Hardimon alleges that it was foreseeable to ARTCO that people could be injured while making emergency repairs, he fails to allege facts supporting an inference that *he* was making emergency repairs, or doing any urgent work, at the time of his injury. Rather, many hours after the collision, he "was performing his assigned duties," which involved using the crane to open barge hatch covers. There is no indication from his complaint that persons or property were at imminent risk if he failed to perform his work.

In sum, there is no support in Hardimon's complaint for his rescuer theory, and the facts he alleged bear no resemblance to scenarios in which courts have applied the doctrine.[3] As a result, his claim fails as a matter of law.

### III.    Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[3] While in briefing and at oral argument Hardimon asserted that he was exigently repairing the barge, the allegations in his operative complaint do not support that claim. *Cf. Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (explaining that allegations in pleadings cannot amend a complaint).